231 P.3d 212 (2010)
STATE of Washington, Respondent,
v.
Donshae Eugene COLEMAN, Appellant.
No. 64923-0-I.
Court of Appeals of Washington, Division 1.
May 10, 2010.
*214 Manek R. Mistry, Jodi R. Backlund, Backlund & Mistry, Olympia, WA, for Appellant.
Carol L. La Verne, Thurston County Prosecutor's Office, Olympia, WA, for Respondent.
MEYER, J.P.T.[*]
¶ 1 Donshae Coleman was convicted of first degree robbery as an accomplice, second degree assault, possession of a stolen motor vehicle, and bail jumping. He appeals, claiming prosecutorial misconduct and improper jury instructions. He also challenges the accomplice liability statute's constitutionality. We reject these arguments. Because the State failed to offer evidence that Coleman was absent at the time designated on his notice of hearing, we reverse his bail jumping conviction and remand for resentencing.

FACTS
¶ 2 Detective Matt Renschler testified that an informant, Sean McGrath, twice arranged to buy cocaine and ecstasy from Sean Phillips. Renschler and other officers set up undercover with a view of McGrath's vehicle. Detective Renschler monitored McGrath over a hidden wire. Renschler observed a black Dodge Magnum arrive, drop off Phillips, and drive away. Over the wire, Renschler heard Phillips enter McGrath's car and McGrath say, "It's yours, it's yours, just take it." He saw Phillips run back toward where the Magnum had dropped him off. The officers followed but lost Phillips.
¶ 3 The officers drove a few blocks to where Phillips would likely emerge. Renschler saw the Magnum driving slowly down the street toward him. They stopped in the street, blocking most of it, and attempted to stop the Magnum. The Magnum charged *215 Renschler's partner, swerved around their vehicle, and sped away. The officers chased the Magnum. They turned a corner and saw it parked. The driver's door was open, and Coleman was beginning to walk away. He was forcefully subdued and arrested. They determined the Magnum was stolen and contained a stolen shotgun. Phillips was also arrested.
¶ 4 Phillips testified that before trial he made a plea agreement to testify against Coleman and received a 45 month sentence for first degree robbery. He had known Coleman for several years. Over objection, he said they sometimes dealt drugs together and that Coleman had driven him to over 10 sales. He told Coleman his plan to rob McGrath a day before it occurred. Coleman said to call him in the morning and they would "meet up and figure it out." Coleman procured a gun for him and drove him to the McGrath robbery. They planned for Coleman to pick him up after the robbery.
¶ 5 Coleman was sentenced to 111 months for the robbery; the other sentences run concurrently.

PROSECUTORIAL VOUCHING
¶ 6 The trial court admitted Phillips' plea agreement without objection. Phillips agreed to participate in any additional truthful, complete, and comprehensive interviews. The defendant's most important obligation pursuant to this agreement is to testify truthfully. In the event that the defendant is deceptive, untruthful, incomplete, the State could terminate the agreement.
¶ 7 At trial, the State offered the agreement on direct examination and elicited testimony from Phillips concerning it. In closing, the State did not mention the agreement's `testify truthfully' provisions. The State told the jury to carefully examine Phillips' testimony as an accomplice. The defense offered no objections concerning the plea agreement throughout the trial. Instead, Coleman used the agreement to tactical advantage by emphasizing that Phillips had lied before and after signing it. Coleman now argues that it was prosecutorial misconduct to offer the plea agreement and to question Phillips about it. He argues that the prosecutor used the agreement to impermissibly vouch for Phillips' credibility.
¶ 8 To raise prosecutorial misconduct on appeal when no objection was made at trial, the defendant must show that the alleged misconduct was so flagrant and ill-intentioned that no curative instruction would have obviated the prejudice it engendered. State v. O'Donnell, 142 Wash.App. 314, 328, 174 P.3d 1205 (2007). It is improper for the prosecution to vouch for the credibility of a government witness. Vouching may occur in two ways: the prosecution may place the prestige of the government behind the witness or may indicate that information not presented to the jury supports the witness's testimony. United States v. Roberts, 618 F.2d 530, 533 (9th Cir.1980). To the extent that the State examined Phillips about the agreement, there was no misconduct. State v. Green, 119 Wash.App. 15, 24, 79 P.3d 460 (2003), review denied, 151 Wash.2d 1035, 95 P.3d 758, cert. denied, 543 U.S. 1023, 125 S.Ct. 660, 160 L.Ed.2d 501 (2004).
¶ 9 The two leading cases in the State of Washington addressing the admissibility of truthfulness provisions in plea agreements are Green, and State v. Ish, 150 Wash.App. 775, 208 P.3d 1281, review granted in part by 167 Wash.2d 1005, 220 P.3d 783 (2009). While they purport to differ in their reasoning, we find that they differ more on the facts than in analysis.
¶ 10 In Ish, the trial court admitted the State's plea agreement with Ish's cellmate, David Otterson. The court redacted a provision requiring Otterson to take a polygraph at the State's request, ruling that the prosecutor's opinion of a witness's credibility was irrelevant and inadmissible. Ish, 150 Wash. App. at 781, 208 P.3d 1281. At trial, the court allowed the State to examine Otterson about his promise in the agreement to testify truthfully. On cross, Ish elicited testimony that Otterson had violated other provisions of the agreement.
¶ 11 On appeal, the court compared the plea agreement's testify truthfully language to testimony about a child's promise to tell the truth when interviewed by police. The court reasoned that just as the child's promise *216 set the context for the child's statements in the interview, Otterson's agreement set the context of his testimony. Ish, 150 Wash. App. at 785-87, 208 P.3d 1281 (discussing State v. Kirkman, 159 Wash.2d 918, 925, 155 P.3d 125 (2007)). The court determined that admission of the agreement did not constitute improper vouching.
¶ 12 In reaching its conclusion, the court in Ish stated that it declined to follow Green. Ish, 150 Wash.App. at 786, 208 P.3d 1281. In Green, this court reviewed the admissibility during direct examination, over objection, of an immunity agreement. The court noted that Green particularly objected to the part of the agreement that stated: `The intent of this agreement is to secure the true and accurate testimony of your client concerning his knowledge of the events surrounding the shooting and robbery of Rio Cole.' Green, 119 Wash.App. at 22, 79 P.3d 460. The agreement also required the witness to `testify truthfully' and contained the substance of the testimony. Green, 119 Wash.App. at 24 & n. 18, 79 P.3d 460 (noting that below, Green had abandoned his initial objection to the portion containing the substance of the testimony).
¶ 13 The court analyzed admission of the agreement under State v. Jessup, 31 Wash. App. 304, 641 P.2d 1185 (1982). There, the court found statements in an immunity agreement that the witness was in protective custody irrelevant and prejudicial. Green, 119 Wash.App. at 23-24, 79 P.3d 460. Relying on Jessup, the court in Green found the statement of the prosecution's intent to secure the witness's testimony and the testify truthfully language prejudicial. Green, 119 Wash.App. at 24, 79 P.3d 460. The court stated that such provisions should be redacted upon request:
While the immunity agreement was admissible after Cole's credibility was attacked, we agree that the language that the intent of the agreement was to secure the true and accurate testimony and the provision that Cole testify truthfully should have been redacted if such a request had been made. These provisions were prejudicial and improperly vouched for Cole's veracity.
Green, 119 Wash.App. at 24, 79 P.3d 460.
¶ 14 We do not find Ish at odds with Green. While following Ish's reasoning, we agree with the Green court that irrelevant and prejudicial statements should be redacted from immunity or plea agreements upon request. We also acknowledge that under certain circumstances, such as those in Green, statements requiring the witness to testify truthfully might be construed as vouching. In Green, the requirement that the witness testify truthfully was admitted in the context that the State knew the witness's testimony and entered the agreement to secure it. But the circumstances regarding the agreement in Ish were different. There, the trial court redacted an irrelevant and prejudicial provision so that the witness's promise to testify truthfully stood alone, not in the context of the State's intent.
¶ 15 Similarly here, there was no declaration of the State's intent in entering the agreement. There were no aspects of the agreement that implicated Coleman's guilt. As in Ish, the only statements in contention were that Phillips testify truthfully at trial. We find that under the circumstances here, the agreement merely set the context for Coleman's testimony.
¶ 16 Further, as in Ish, Coleman did not object to admission of the plea agreement and did not request redaction. He had tactical reasons to do so. In light of Ish and consistent with Green, Coleman has not shown conduct so flagrant and ill-intentioned that a curative instruction could not have fixed any resulting prejudice. We, therefore, find no error in the admission of the agreement save for its admission before Phillips' credibility was attacked. The error was harmless, however, as the agreement was not prejudicial and was admissible for rehabilitation. Green, 119 Wash.App. at 24-25, 79 P.3d 460.
¶ 17 Coleman also claims ineffective assistance of counsel because his trial attorney confirmed during cross-examination that Phillips' most important obligation under the plea agreement was to testify truthfully. *217 Deficient performance is not shown by matters that go to trial strategy or tactics. State v. Hendrickson, 129 Wash.2d 61, 77-78, 917 P.2d 563 (1996). Here, after confirming Phillips' obligation, counsel elicited that he lied both before and after signing it. Counsel's cross-examination of Phillips about the plea agreement was a trial strategy aimed at exposing and emphasizing Phillips' repeated lying. Therefore, we reject Coleman's claim.

ACCOMPLICE LIABILITY
¶ 18 The Washington accomplice liability statute makes someone who knowingly aids the commission of a crime as culpable as the person who performs the criminal acts. RCW 9A.08.020. Coleman argues this statute is unconstitutionally overbroad in that it criminalizes a substantial amount of First Amendment speech. He argues that because it does not define or limit the term aid, the statute criminalizes speech, press, or assembly activity that the actor knows will encourage vandalism, traffic obstruction, or other crimes, even if the actor has no intent to promote or further crime.
¶ 19 A statute is unconstitutionally overbroad on its face if it prohibits a substantial amount of protected speech and conduct. City of Seattle v. Huff, 111 Wash.2d 923, 925, 767 P.2d 572 (1989). A statute which regulates behavior, and not pure speech, will not be overturned as overbroad unless the challenging party shows the overbreadth is both real and substantial in relation to the statute's plainly legitimate sweep. Virginia v. Hicks, 539 U.S. 113, 122, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003); City of Seattle v. Webster, 115 Wash.2d 635, 641, 802 P.2d 1333 (1990), cert. denied, 500 U.S. 908, 111 S.Ct. 1690, 114 L.Ed.2d 85 (1991).
¶ 20 We find Coleman's case similar to Webster. Webster was charged under a Seattle ordinance banning intentional obstruction of vehicle or pedestrian traffic. The Washington Supreme Court explained the ordinance was not overbroad because the requirement of criminal intent prevented it from criminalizing protected speech activity that only consequentially obstructed vehicle or pedestrian traffic. Webster, 115 Wash.2d at 641-42, 802 P.2d 1333.
¶ 21 In the same way, the accomplice liability statute Coleman challenges here requires the criminal mens rea to aid or agree to aid the commission of a specific crime with knowledge the aid will further the crime. Therefore, by the statute's text, its sweep avoids protected speech activities that are not performed in aid of a crime and that only consequentially further the crime. See Brandenburg v. Ohio, 395 U.S. 444, 448, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (drawing a distinction between `the mere abstract teaching. . . of the moral propriety or even moral necessity for a resort to force and violence' and `preparing a group for violent action and steeling it to such action') (quoting Noto v. United States, 367 U.S. 290, 297-98, 81 S.Ct. 1517, 6 L.Ed.2d 836 (1961)). Further, Coleman has not shown any actual criminalization of protected speech. We reject his argument and find the statute is not overbroad.

THE ACCOMPLICE LIABILITY INSTRUCTION
¶ 22 Coleman also challenges the accomplice liability instruction. The court instructed the jury that it could find Coleman guilty as an accomplice if it found that Coleman acted with knowledge that his act would promote or further the crime and that he aided or agreed to aid in planning or committing the crime. Jury Instruction 14. Coleman argues the instruction was legally insufficient, alleging it does not require proof of an "overt act."
¶ 23 The cases Coleman cites establish that more than presence and assent to or knowledge of the crime is required for conviction under the accomplice liability statute. See, e.g., State v. Renneberg, 83 Wash.2d 735, 739, 522 P.2d 835 (1974) (accomplice liability instruction was adequate that required specific criminal intent, not merely passive assent, and the state of being ready to assist or actually assisting by presence). The jury instruction here required a finding that Coleman did more than passively assent to Phillips' robbery. It required the jury to find that Coleman knowingly, with specific criminal mens rea, stood ready to aid or aided *218 Phillips in the commission of the robbery. We find the instruction adequate.

THE KNOWLEDGE INSTRUCTION
¶ 24 At trial, the court instructed the jury that to convict Coleman as an accomplice, it had to find that he acted with knowledge that his action would promote or facilitate the commission of the crime. Jury Instruction 14. The court also instructed the jury that acting knowingly or with knowledge also is established if a person acts intentionally. Jury Instruction 7.
¶ 25 Coleman argues the knowledge instruction created a mandatory presumption by conflating a finding he performed any intentional act with the accomplice liability element that he acted with knowledge to further a crime. He argues the conflation relieved the State of its burden of proving the knowledge element. We rejected the same argument in State v. Gerdts, 136 Wash. App. 720, 728, 150 P.3d 627 (2007). Where there is only one mens rea element, there can be no conflation. Gerdts, 136 Wash.App. at 728, 150 P.3d 627.

404(b) EVIDENCE
¶ 26 The trial court admitted, over objections to relevance, prejudice, and impermissible character evidence, testimony that Coleman supplied marijuana to Phillips for resale and drove him to drug sales. Coleman renews his arguments, claiming the trial court abused its discretion in admitting the evidence.
¶ 27 Relevant Evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. ER 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. ER 404(b). We review the trial court's ruling for a manifest abuse of discretion. State v. Brockob, 159 Wash.2d 311, 348, 150 P.3d 59 (2006).
¶ 28 Here, the disputed evidence of the past relationship between Coleman and Phillips explained why Phillips would trust Coleman enough to recruit Coleman's help with a drug related robbery. It was therefore relevant. Given the evidence that Coleman obtained the gun for Phillips, was in possession of a stolen car and stolen shotgun, and given the officers' descriptions of his evasion and resistance to arrest, the evidence that Coleman and Phillips were previous drug associates was arguably not more prejudicial than probative. As the trial court ruled, after having undertaken ER 403 balancing, the evidence also showed preparation, plan, knowledge, and absence of mistake or accident. We, therefore, do not find the trial court's ruling manifestly unreasonable. There was no abuse of discretion.

BAIL JUMPING
¶ 29 The evidence before the jury showed that Coleman signed a trial continuance order that directed him to appear before the court on February 4, 2009 at 9:00 a.m. A court clerk's minute from Coleman's status hearing dated February 4, 2009, at 8:30 a.m. stated, "[s]tricken, defendant on bench warrant status." At trial, the criminal and civil manager of the Thurston County Clerk's Office testified that the clerk's minute meant Coleman did not appear at the 8:30 status hearing. Coleman argues this evidence was insufficient to convict him of bail jumping because it did not show he failed to appear at the time indicated on his notice9:00 a.m.
¶ 30 In reviewing a sufficiency of the evidence challenge, this court must determine, after viewing the evidence in the light most favorable to the State, whether any rational trier of fact could have convicted the defendant beyond a reasonable doubt. State v. Fredrick, 123 Wash.App. 347, 354, 97 P.3d 47 (2004). A person is guilty of bail jumping if he has notice that he has been released by court order or admitted to bail with knowledge of the requirement of a subsequent *219 personal appearance before any court of this state and fails to appear before the court as required. RCW 9A.76.170(1).
¶ 31 Here, Coleman's notice required him to be present on February 4, 2009, at 9:00 a.m. Taking all the evidence and reasonable inferences in the light most favorable to the State, nothing before the jury established that Coleman was absent at the time specified on his notice. The evidence was insufficient, and we reverse his conviction for bail jumping. Accordingly, we remand for resentencing.
¶ 32 Affirmed in part, reversed in part, and remanded for resentencing.
WE CONCUR: DWYER, C.J., and LEACH, J.
NOTES
[*] Judge John M. Meyer is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.