FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 AUG -5 AM 9: 41



## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 67873-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| GARY SAWYER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 5, 2013 |

LAU, J. — A jury convicted Gary Sawyer of bail jumping and two counts of possession of cocaine. Sawyer appeals his judgment and sentence and claims (1) the evidence is insufficient to support his conviction for bail jumping, (2) he was denied effective representation of trial counsel, and (3) his offender score is incorrect because an out-of-state conviction was improperly determined to be comparable to a Washington felony. Finding no error, we affirm Sawyer's convictions and sentence.

## FACTS

Based on an incident observed by Seattle police officers in downtown Seattle on December 17, 2009, the State charged Gary Sawyer with possession of cocaine with intent to deliver. The court released Sawyer on his personal recognizance, and he signed orders acknowledging his obligation to appear at future court proceedings and trial.

The case was set for trial on February 7, 2011, and on that date, Sawyer appeared with his counsel at 9:35 a.m. The State indicated its intent to add a second drug charge. Approximately 10 minutes into the proceedings, after Sawyer forcefully expressed his opinion that neither he nor his counsel was prepared for trial, expressed disagreement with counsel about his offender score, and indicated that he might ask to waive his right to counsel and represent himself, the trial court granted a recess until 10:00 a.m. so Sawyer could confer with counsel. Before the recess, the court informed Sawyer the trial would proceed after the recess even if he chose to represent himself. When the court reconvened 15 minutes later, Sawyer did not appear and could not be reached by telephone. The court struck the trial date and signed a bench warrant for Sawyer's arrest. Sawyer did not reappear in court until after he was arrested on the warrant two months later.

Before the case went to trial in August 2011, the State amended the information and added a charge of delivery of cocaine based on the December 2009 incident and a charge of bail jumping based on Sawyer's failure to appear for trial on February 7, 2011. At trial, Sawyer testified and acknowledged that he did not reappear after a break in the proceedings on February 7. Sawyer explained that his wife had cancer and that during the break, he learned that she had a medical emergency and was taken to the hospital. Sawyer said he "took off in a panic," did not notify the court, or return to court that day or thereafter. Report of Proceedings (Aug. 10, 2011) (RP) at 120. Sawyer's attorney asked whether the fact that he had been charged with more serious drug offenses, instead of mere drug possession, also factored into his decision not to return to court. Sawyer said, "Basically, yes." RP at 121.

-2-

The jury convicted Sawyer of bail jumping and of lesser included charges of possession of cocaine on both drug counts. Sawyer's counsel asked the court to impose an exceptional sentence below the standard range. The trial court denied the request but imposed a sentence of 33 months—the bottom of the range for bail jumping, the most serious offense.

## ANALYSIS

### Sufficiency of the Evidence

Sawyer contends that the evidence is insufficient to support his conviction for bail jumping because he appeared for trial as ordered on the morning of February 7. He argues that the bail jumping statute requires only that the defendant initially appear for court and the failure to remain in court does not violate the statute.

In reviewing a challenge to the sufficiency of the evidence, this court must determine, after viewing the evidence in the light most favorable to the State, whether any rational trier of fact could have convicted the defendant beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. State v. Brown, 162 Wn.2d 422, 428, 173 P.3d 245 (2007). An insufficiency claim admits the truth of the State's evidence and all reasonable inferences. Brown, 162 Wn.2d at 428.

To prove bail jumping, the State had to prove that (1) the defendant failed to appear before a court and (2) the defendant had been released by court order with knowledge of the requirement of a subsequent personal appearance before that court.

RCW 9A.76.170(1). Sawyer claims that this case is analogous to State v. Coleman, 155 Wn. App. 951, 231 P.3d 212 (2010). In that case, a court order directed the defendant to appear in court at 9:00 a.m. and the clerk's minutes showed that he failed to appear at 8:30 a.m. The evidence was insufficient to establish bail jumping because "nothing before the jury established that [the defendant] was absent at the time specified on his notice." Coleman, 155 Wn. App. at 964.

But here, the evidence before the jury established that the court directed Sawyer to appear at 10:00, after providing him an opportunity to briefly consult with his attorney in private. There is no evidence, and Sawyer does not actually claim, that he was unaware that he was required to appear after the recess. The jury was entitled to conclude based on the evidence that Sawyer had knowledge of his required personal appearance after the recess to proceed with trial and failed to appear.[1] The evidence is sufficient to support the jury's verdict.

Offender Score

Sawyer argues that his offender score was miscalculated because the trial court improperly counted his 2005 Illinois conviction for theft from a person.

---

[1] Sawyer suggests that the trial court could have found that he waived his right to be present and conducted the trial in his absence. Although a court is permitted to do this if a defendant is voluntarily absent after trial has commenced in his presence, see CrR 3.4(b), the trial had not yet commenced on February 7 in Sawyer's presence because the jury panel had not been sworn in for voir dire. See State v. Crafton, 72 Wn. App. 98, 103, 863, 863 P.2d 620 P.2d 620 (1993) (defendant is present for the commencement of trial if he or she is present when the jury panel is sworn in for voir dire).

At the initial sentencing hearing, the State argued that Sawyer had an offender score of 10 based on six prior Illinois convictions, three prior Washington forgery convictions, and one current offense, because the bail jumping and drug offenses occurred on different dates. After the defense questioned the inclusion of two prior Illinois theft convictions, the court continued the sentencing hearing.

Before the second hearing, the State filed a sentencing memorandum and took the position that Sawyer's offender score was actually 9. This calculation included five Illinois convictions: a 1988 drug conviction, a 1992 attempted robbery conviction, a 1999 drug conviction, a 2002 robbery conviction, and a 2005 conviction for theft from a person. The State conceded that it could not establish the comparability of one of the Illinois convictions it previously relied upon—retail theft (enhanced). In support of its recommendation, the State argued that Sawyer's 2005 theft conviction was comparable to a conviction for first degree theft in Washington. The State also submitted documentation of Sawyer's Illinois criminal history, including a copy of the 2005 judgment and sentence upon Sawyer's guilty plea to theft from a person and the grand jury's indictment.

At the second hearing, Sawyer's counsel agreed that the 2005 Illinois conviction for theft from a person was properly included, but argued that Sawyer's offender score was 7 because the three Washington forgery convictions encompassed the same criminal conduct. The court again continued the sentencing to allow the State to respond to the same criminal conduct argument.

At the third hearing, Sawyer's counsel acknowledged that his client did not agree that three of his Illinois convictions should be included: 2005 theft from a person, 2002

robbery, and 1992 attempted robbery. Counsel nonetheless conceded that he had spent an "exhaustive amount of time" reviewing the judgments and sentences and the underlying factual allegations and came to the "unfortunate but firm conviction they do count as felonies." RP (Oct. 6, 2011) at 31.

Later during the same hearing, counsel stated that while he remained satisfied that Sawyer's 2005 conviction for theft from a person qualified as first degree theft under Washington law, he would "qualify" his concession "to satisfy [his] client." RP (Oct. 6, 2011) at 41. Counsel stated that he wanted to put his qualification "on the record" to allow Sawyer to pursue his argument on appeal. RP (Oct. 6, 2011) at 42. Before he was sentenced, Sawyer personally objected to the inclusion of the theft conviction. He argued that the value of property stolen was less than $150 and, therefore, the crime was a misdemeanor under Illinois law.

The court sentenced Sawyer based on an offender score of 7, agreeing that the forgery convictions encompassed the same criminal conduct. The court also stated that it was "confident" that Sawyer's conviction for theft from a person was a felony in Illinois and comparable to a felony in Washington. RP (Oct. 6, 2011) at 51.

The State has the burden to show, by a preponderance of the evidence, that the record supports the existence and classification of out-of-state convictions. State v. Ford, 137 Wn.2d 472, 479-80, 973 P.2d 452 (1999). However, an affirmative acknowledgement by defense counsel that a prior out-of-state conviction is properly included in the offender score satisfies the requirements of the Sentencing Reform Act and requires no further proof. State v. Ross, 152 Wn.2d 220, 230, 95 P.3d 1225 (2004).

Here, the defense affirmatively acknowledged that Sawyer's 2005 Illinois theft conviction was properly included in the offender score. Therefore, the trial court was entitled to rely upon the concession and could have declined to consider Sawyer's pro se argument. State v. Bergstrom, 162 Wn.2d 87, 97, 169 P.3d 816 (2007). However, to the extent that counsel later retracted the concession and the trial court responded to Sawyer's pro se objection by ruling on the classification of the prior foreign conviction, Sawyer's claim of error is preserved for our review. See Bergstrom, 162 Wn.2d at 97 (where the court considered and ruled on the defendant's pro se argument, it was error to fail to hold an evidentiary hearing and require the State to produce evidence in support of the offender score).

Where, as here, a criminal defendant has out-of-state convictions, the sentencing court must conduct a comparability analysis to determine if the out-of-state conviction is either the legal or factual equivalent of a Washington crime. State v. Calhoun, 163 Wn. App. 153, 160, 257 P.3d 693 (2011). An out-of-state conviction is legally equivalent to a Washington crime if both crimes have the same required elements. Calhoun, 163 Wn. App. at 160. But if the elements required to convict are different, the sentencing court must determine if the crimes are factually equivalent by reviewing the out-of-state conviction record to ascertain whether the defendant's conduct establishes that he committed an act comparable to a Washington crime. State v. Jackson, 129 Wn. App. 95, 104-05, 117 P.3d 1182 (2005). In making its factual comparison, the sentencing court may only rely on facts in the foreign record that are admitted, stipulated to, or proved beyond a reasonable doubt. In re Pers. Restraint of Lavery, 154 Wn.2d 249, 258, 111 P.3d 837 (2005); State v. Farnsworth, 133 Wn. App. 1, 22, 130 P.3d 389

(2006). We review the trial court's classification of out-of-state crimes and the calculation of the offender score de novo. State v. Labarbera, 128 Wn. App. 343, 348, 115 P.3d 1038 (2005); Bergstrom, 162 Wn.2d at 92.

In this case, the evidence shows that Sawyer was convicted in 2005 of theft from a person under Illinois statute 720 Ill. Comp. Stat. (ILCS) 5/16-1(a)(b)(4) (2004). This was a felony. The provision under which he was convicted specifically provides, "Theft of property from the person not exceeding $300 in value, or theft of property exceeding $300 and not exceeding $10,000 in value, is a Class 3 felony." 720 ILCS 5/16-1(a)(b)(4).[2] The State concedes that the elements of the Illinois statute are not the same as the Washington statute and that the Illinois statute is "conceivably broader."[3] Br. of Respondent at 13. The State argues, however, that the Illinois conviction is factually comparable to a Washington conviction for first degree theft.

The Washington statute in effect at the time, RCW 9A.56.030(1)(b) (1995), provided that a person was guilty of first degree theft if he or she committed theft of "[p]roperty of any value other than a firearm as defined in RCW 9.41.010 taken from the

_____

[2] Although Sawyer claimed below that the crime was a misdemeanor because of the value of the property stolen, he did not cite a provision of the statute and his argument appears to be incorrect. According to the provisions applicable at the time, the crime was a misdemeanor only if the theft of property was not from a person and did not exceed $300 in value. See 760 ILCS 5/16-1(b)(1).

[3] Compare State v. Chamroeum Nam, 136 Wn. App. 698, 705, 150 P.3d 617 (2007) (defining property "taken from the 'person' of another" as property in physical contact with person's body or clothing) with People v. Pierce, 226 Ill.2d 470, 475, 877 N.E.2d 408, 414 (2007) (theft from person may include property taken from person's body or property in presence of a person, i.e. within person's immediate custody and control).

person of another." The State relies on the Illinois indictment as establishing the underlying facts of Sawyer's crime. That document alleges that Sawyer committed theft from a person because he "knowingly took property, being United States Currency, from the person of Pedro Valasco, not exceeding $300 in value, in violation of 720 ILCS 5/16-1(a)(b)(4)." The indictment originally stated that Sawyer took currency "from the presence of Pedro Velasco," but the term "presence" was struck and "person" was interlineated above. Sawyer argues that only the guilty plea statement or transcript of the guilty plea hearing could show the particular facts to which he stipulated. Because neither of these documents is in the record, he contends that the State failed to prove factual comparability. But according to Illinois law, a plea of guilty "constitutes an admission of every fact alleged in an indictment," as long as the fact admitted is "an ingredient of the offense charged." People v. Henderson, 95 Ill. App. 3d 291, 419 N.E.2d 1262, 1265, 50 Ill. Dec. 813 (1981); People v. Langford, 392 Ill. 584, 65 N.E.2d 440, 442 (1946). Sawyer's taking of property "not exceeding $300 in value" from "the person" of the victim are facts that constitute ingredients of the Illinois crime. In pleading guilty, Sawyer stipulated to those facts stated in the indictment.

Accordingly, we conclude that the trial court did not miscalculate Sawyer's offender score by including this prior conviction.

<u>Ineffective Assistance of Counsel</u>

Sawyer argues that trial counsel was deficient because (1) counsel violated the duty of loyalty by suggesting to the jury that his client's testimony was not credible and (2) counsel did not rely on his testimony in arguing in support of an exceptional sentence.

In order to prevail on these claims, Sawyer must show that counsel's performance was deficient and that this deficiency prejudiced him. State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Performance is deficient only if it falls "below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Performance is not deficient if counsel's conduct can be characterized as a legitimate trial strategy. State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

In closing, counsel reminded the jury that no evidence contradicted Sawyer's explanation as to why it was necessary for him to leave court. But then, counsel stated, "I don't care whether you believe him or not, frankly," and offered another possibility that Sawyer may have fled from court in a panic because the drug charges he was facing were significantly more serious than the crime he actually committed—possession of drugs. RP (Aug. 11, 2011) at 52.

In making this argument, defense counsel did not tell the jury that it should not believe Sawyer. Instead, counsel suggested to the jury that it could acquit Sawyer whether or not it was persuaded by Sawyer's account of his own motivations. This was a reasonable argument in light of the fact that Sawyer's explanation for his failure to appear was uncorroborated and implausible. He offered no reason why he did not tell his attorney about the emergency, wait a few minutes for court to resume so he could inform the judge, call the court from the hospital, or return to court once the emergency was resolved. Under the circumstances, counsel's remarks were a legitimate strategy and did not amount to an abandonment of defense counsel's duty of loyalty. See United States v. Harris, 761 F.2d 394, 402 (7th Cir.1985) (defense counsel's statement

-10-

during closing argument that defendant "'was not totally honest with you'" was reasonable attempt to mitigate negative effect of defendant's damaging testimony and did not constitute deficient performance).

Finally, Sawyer argues that counsel should have advocated for an exceptional sentence on a different basis. He suggests that counsel should have requested an exceptional sentence based on a failed defense to bail jumping of "uncontrollable circumstances." See RCW 9A.76.170(2). Sawyer claims that the trial court may have granted such a request. The record demonstrates otherwise. The trial court expressly considered Sawyer's explanation for his departure when it imposed the sentence:

> You're going to get the low range -- the low end of the range, and I think that that's what is appropriate in this case. It may have been that any family member would have bolted at some news like that, but I think that any reasonable person would have left a message, would have contacted the court immediately. It may have been handled differently if you had done that instead of just leaving and disappearing.

RP (Oct. 6, 2011) at 53. The record does not support the claim that the court would have been inclined to impose an exceptional sentence if counsel had focused on Sawyer's testimony instead of the State's charging decision.

Because Sawyer fails to demonstrate that counsel was deficient or that he was prejudiced, his claims of ineffective assistance of counsel fail.

We affirm.

Jan, J.

WE CONCUR:

Cox, J.

Becker, J.

-11-