FILED
COURT OF APPEALS
DIVISION II

2013 SEP 24 AM 9: 27

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><div align="right">Respondent,</div> | No. 42941-1-II<br>Consolidated with:<br>No. 42997-7-II |
| v. | |
| ROGER LEE WILSON, PAUL ORTEGON,<br><div align="right">Appellants.</div> | UNPUBLISHED OPINION |

FEARING, J.[1] — A jury found Roger Wilson and Paul Ortegon guilty of unlawful possession of a controlled substance and third degree theft. Ortegon appeals both convictions, arguing that (1) insufficient evidence supports his convictions because the State failed to show more than his mere proximity to the drugs and because the State failed to show that he knew that his actions would promote or facilitate the theft, and (2) Washington's accomplice liability statute is unconstitutionally overbroad because it criminalizes protected First Amendment speech. Wilson appeals his unlawful possession of a controlled substance conviction, arguing that his counsel was ineffective for failing to propose a jury instruction on the affirmative defense of unwitting possession. Ortegon joins in this argument.

---

[1] Judge George Fearing is a Division III judge serving with the Court of Appeals, Division II, under CAR 21(a).

We affirm Ortegon's theft conviction. But we reverse Ortegon's unlawful possession of a controlled substance conviction because the State failed to show more than Ortegon's mere proximity to the drugs; accordingly, we remand for dismissal of this charge with prejudice. Because we hold that Wilson's counsel was not ineffective, we affirm his conviction for unlawful possession of a controlled substance.

## FACTS

On March 18, 2011, Wilson drove a borrowed truck, with its tailgate down, to the unmanned Flying K gas station in Longview. He and passenger Ortegon exited the vehicle. Wilson used a key to open the panel covering the gas dispenser and attached an electronic keypad to the dispenser so that gas could be released from the pump without activating the cash register and recording a sale. While Wilson manipulated the gas dispenser, Ortegon stood on the driver's side facing him. Ortegon then removed the cap from a 100- to 150-gallon fuel container lying in the truck's bed, after which Wilson removed a gas nozzle from the pump and filled the container. While the two waited for the container to fill, Wilson stood by the open driver's side door of the truck and Ortegon leaned on the back of the vehicle's driver's side facing Wilson. At one point, Ortegon handed Wilson the windshield cleaner located near the gas pump and Wilson cleaned the truck's windshield.

A Flying K gas station employee remotely observed Ortegon and Wilson on the station's long-view surveillance cameras and the employee called the Longview police. When police arrived, Wilson stood, with the gas nozzle in his hand, on the driver's side of the truck. An officer observed him close the dispenser door, turn the key, and throw the key into the back of the truck.

2

No. 42941-1-II, consolidated with No 42997-7-II

Longview officers arrested Ortegon and Wilson and obtained a warrant to search the truck. The officers found two cigarette packs in the middle of the truck's bench seat, one of which contained a crystalline substance later identified as methamphetamine. The officers also discovered Wilson's wallet and some paperwork bearing his name thereon. The police did not find any of Ortegon's personal belongings in the vehicle; nor did they find any item on his person connecting him to drug use. Flying K employees later recovered 90 to 95 gallons of fuel from the tank in the truck's bed.

The State charged Ortegon and Wilson each with one count of second degree theft under RCW 9A.56.040(1)(a)[2] and RCW 9A.56.020(1)(a)[3] and one count of unlawful possession of a controlled substance under RCW 69.50.4013(1).[4] After the State rested, Ortegon and Wilson successfully moved to dismiss the second degree theft charge because the State failed to establish that the value of the stolen gas exceeded $750. The trial court instructed the jury on third degree theft.

When reviewing the jury instructions with the trial court, Ortegon's counsel noted that although the State's instruction on unlawful possession of a controlled substance contained the defense of unwitting possession, "there was no assertion of an affirmative defense of unwitting

[2] RCW 9A.56.040(1)(a) provides in relevant part, "A person is guilty of theft in the second degree if he or she commits theft of . . . [p]roperty or services which exceed(s) seven hundred fifty dollars in value but does not exceed five thousand dollars in value."

[3] RCW 9A.56.020(1)(a) provides the following definition for "theft," "To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services."

[4] RCW 69.50.4013(1) provides, "It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter." Methamphetamine is a controlled substance. RCW 69.50.206(d)(2).

3

possession" in this case. Report of Proceedings (Nov. 29, 2011) at 201. The trial court removed that portion of the instruction without objection.

During closing argument, Wilson conceded guilt on the third degree theft charge. The jury found both Ortegon and Wilson guilty of third degree theft and unlawful possession of methamphetamine. The trial court sentenced them to 10 days' confinement. Ortegon appeals both convictions and Wilson appeals his unlawful possession of a controlled substance conviction.

## ANALYSIS

### I.  SUFFICIENCY OF THE EVIDENCE

Ortegon first argues that insufficient evidence supports his convictions because the State failed to prove that he possessed the methamphetamine or that he knowingly promoted or facilitated the crime of theft. Because the only evidence of possession of methamphetamine was Ortegon's proximity to the cigarette pack containing the drug, we hold that the evidence was insufficient to support his unlawful possession conviction and we reverse and remand for dismissal with prejudice. We affirm Ortegon's theft conviction because the video footage of the theft was sufficient evidence from which a reasonable juror could find that Ortegon knew that his activity would promote or facilitate Wilson's theft of the gas.

#### A.  Standard of Review

Sufficient evidence exists to support a conviction if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the State. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn from that evidence. *State v. Salinas*, 119 Wn.2d 192,

201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415–16, 824 P.2d 533 (1992). The remedy for a conviction based on insufficient evidence is reversal and dismissal with prejudice. *State v. Turner*, 103 Wn. App. 515, 520, 13 P.3d 234 (2000).

B. Insufficient Evidence of Unlawful Possession

To convict Ortegon of unlawful possession of a controlled substance, the State had to prove beyond a reasonable doubt that he "possesse[d]" a controlled substance without a valid prescription or other authorization. RCW 69.50.4013(1). Possession may be actual or constructive. *State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994). "A defendant has actual possession when he or she has physical custody of the item and constructive possession if he or she has dominion and control over the item. Dominion and control means that the object may be reduced to actual possession immediately." *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002) (internal citation omitted). Although control need not be exclusive, the State must show more than mere proximity to the substance, a rule that controls our decision. *State v. Raleigh*, 157 Wn. App. 728, 737, 238 P.3d 1211 (2010), *review denied*, 170 Wn.2d 1029 (2011). *See also State v. George*, 146 Wn. App. 906, 923, 193 P.3d 693 (2008) (insufficient evidence of constructive possession where State proved only that drugs had been found under rear floorboard where defendant had been a passenger); *State v. Cote*, 123 Wn. App. 546, 550, 96 P.3d 410 (2004) (evidence that defendant was at one point in proximity to drugs found in vehicle in which he was a passenger was insufficient to prove constructive possession).

5

The police seized the methamphetamine from the truck in which Ortegon rode as a passenger. Having dominion and control over premises where contraband is found raises a rebuttable inference of dominion and control over contraband inside the premises. *State v. Cantabrana*, 83 Wn. App. 204, 208, 921 P.2d 572 (1996). A vehicle can be considered a "premises" over which a defendant can exercise dominion and control for the purposes of constructive possession. *State v. Mathews*, 4 Wn. App. 653, 656, 484 P.2d 942 (1971). Nevertheless, in cases in which we have held that there was sufficient evidence of constructive possession of contraband found within a vehicle, the State presented evidence that the defendant owned the vehicle, was the driver of the vehicle, and/or possessed the keys to the vehicle. *State v. Bowen*, 157 Wn. App. 821, 828, 239 P.3d 1114 (2010); *Turner*, 103 Wn. App. at 524; *State v. McFarland*, 73 Wn. App. 57, 70, 867 P.2d 660 (1994), *aff'd*, 127 Wn.2d 322, 899 P.2d 1251 (1995); *State v. Reid*, 40 Wn. App. 319, 326, 698 P.2d 588 (1985); *State v. Potts*, 1 Wn. App. 614, 617, 464 P.2d 742 (1969). In cases "where the evidence is insufficient to establish dominion and control of the premises, mere proximity to the drugs and evidence of momentary handling is not enough to support a finding of constructive possession." *State v. Spruell*, 57 Wn. App. 383, 388, 788 P.2d 21 (1990).

The State does not argue that Ortegon had actual control over the methamphetamine. Nor does the State argue that Ortegon constructively possessed the methamphetamine by virtue of dominion and control over the truck. No evidence showed that Ortegon owned or drove the pickup or that he possessed its keys. Thus, there was insufficient evidence to support a finding that Ortegon exercised dominion and control over the vehicle. *See e.g.*, *Cote*, 123 Wn. App. at 550 (Defendant "was seen as a passenger in the truck, but this alone does not establish he had dominion and control over it."). Accordingly, we must determine whether the State presented

6

evidence from which a reasonable juror could conclude that Ortegon constructively possessed the methamphetamine. *Spruell*, 57 Wn. App. at 388.

The State argues that Ortegon constructively possessed the cigarette pack containing methamphetamine because officers found the pack next to where Ortegon earlier sat as a passenger. To repeat, the State must prove something more than mere proximity. *Mathews*, 4 Wn. App. at 656. In *Mathews*, after searching a vehicle occupied by Mathews and three other individuals, officers found a package of heroin underneath the carpet near the seat where Mathews had sat. 4 Wn. App. at 655-66. The court recognized that Mathews's proximity to the heroin alone was insufficient to prove constructive possession. *Mathews*, 4 Wn. App. at 656. The court nonetheless affirmed his conviction because there was evidence that (1) Mathews was a known heroin user, (2) he purchased and used heroin on the day of his arrest, (3) paraphernalia typically used by heroin users was found on his person, and (4) occupants of the vehicle testified that the heroin did not belong to them and that that they knew nothing about of its presence. *Mathews*, 4 Wn. App. at 656-57.

Here, in contrast, the State presented no evidence that Ortegon had a history of drug use or that any drugs or paraphernalia were on his person. There was also no evidence ruling out Wilson's possession of the drugs. Because the only evidence linking Ortegon to the methamphetamine was that it was found on the truck's seat between where he and Wilson had sat, there is insufficient evidence for a conviction.

C. Sufficient Evidence of Theft

Ortegon also argues that the State failed to present sufficient evidence to convict him of theft as an accomplice because it failed to present any evidence that he knew that his actions would promote or facilitate the commission of theft. We disagree.

7

Under RCW 9A.08.020(3)(a),

[a] person is an accomplice of another person in the commission of a crime if[, w]ith knowledge that it will promote or facilitate the commission of the crime, he or she . . . [s]olicits, commands, encourages, or requests such other person to commit it; or . . . [a]ids or agrees to aid such other person in planning or committing it.

Ortegon argues that there was insufficient evidence to meet the "knowledge" element of the accomplice liability statute because the only evidence of his participation in the theft was his unscrewing of a gas container cap.

In this case, the key evidence of accomplice culpability is a video, rather than witness testimony. Every picture tells a story, and a video tells a richer story. The video captured the pickup truck arriving at the fuel dispensers, after which both Wilson and Ortegon exited the truck. Both men wore sweatshirts with hoods[5] that conveniently hid their faces from the video camera. The tailgate of the truck was down and precluded the video camera from picturing the pickup's license plate number. While Wilson opened the panel covering the gas dispenser and manipulated the dispenser to stream free gas, Ortegon stood on the driver's side of the truck within five feet of Wilson and faced Wilson. The jury could have readily concluded that Ortegon observed Wilson's machinations and knew that he had not previously arranged for payment and was stealing gas. The video further showed Ortegon opening a large gas container, immediately after which Wilson placed the nozzle in the container and Ortegon handed Wilson a squeegee for purposes of washing the windshield. This was evidence sufficient for any reasonable juror to conclude that when Ortegon handed the instrument to Wilson, he intended to

---

[5] By referencing a hood, we do not suggest that the wearing of a hood is evidence of criminal activity. But here the jury could have concluded that Ortegon's wearing of a hood, under these circumstances, was purposeful and, with the knowledge that a camera might record his activities, he intended to hide his identity in order to avoid capture. Fortuitously, he did not expect someone to be contemporaneously viewing the video.

8

assist in Wilson's diverting attention from the theft by pretending to partake in an everyday ordinary excursion to a gas station. The evidence amply supports Ortegon's theft conviction.

II.    CONSTITUTIONALITY OF ACCOMPLICE LIABILITY STATUTE

Ortegon next argues that the accomplice liability statute is unconstitutionally overbroad because it criminalizes speech protected by the First Amendment. Prior case law compels us to reject this argument.

The First Amendment, applicable to the states through the Fourteenth Amendment, provides in relevant part that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I; *Kitsap County v. Mattress Outlet*, 153 Wn.2d 506, 511, 104 P.3d 1280 (2005). "A statute is unconstitutionally overbroad on its face if it prohibits a substantial amount of protected speech and conduct." *State v. Coleman*, 155 Wn. App. 951, 960, 231 P.3d 212 (2010), *review denied,* 170 Wn.2d 1016 (2011).

In support of his argument that the statute is overbroad, Ortegon cites *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969), in which the United States Supreme Court held that the First Amendment prohibits criminalization of speech supporting criminal activity unless the speech "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." He argues that Washington's accomplice liability statute violates the *Brandenburg* rule because the term "aid" is not defined in the statute and the pattern jury instructions define "aid" as "all assistance whether given by words, acts, encouragement, support, or presence." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.51, at 217 (3d ed. 2008). Thus, he argues, the statute criminalizes protected First Amendment speech because the term "aid" can include speech other than the limited unprotected speech described in *Brandenburg*.

9

In *Coleman*, Division One rejected an identical argument. 155 Wn. App. at 961. The *Coleman* court held that because the accomplice liability statute "requires the criminal mens rea to aid or agree to aid the commission of a specific crime with knowledge the aid will further the crime [the statute's] sweep avoids protected speech activities that are not performed in aid of a crime and that only consequentially further the crime." 155 Wn. App. at 960-61 (citing *Brandenburg*, 395 U.S. at 448). In *State v. Ferguson*, 164 Wn. App. 370, 376, 264 P.3d 575 (2011), *review denied*, 173 Wn.2d 1035 (2012), we explicitly adopted Division One's rationale in *Coleman* and held that the accomplice liability statute is not unconstitutionally overbroad. *Ferguson* controls here and this argument fails.

III.    INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Ortegon and Wilson argue that their respective trial counsel were ineffective for failing to request a jury instruction on the affirmative defense of unwitting possession of methamphetamine. Since we reverse Ortegon's conviction on other grounds, we address only Wilson's argument. We disagree with Wilson.

The Sixth Amendment to the United States Constitution guarantees the right to legal counsel in criminal trials. The Washington State Constitution also grants an accused, in a criminal prosecution, the right to appear by counsel. WASH. CONST. art. I, § 22. Washington courts have not extended the protections of the state constitution beyond the protections afforded by the United States Constitution. Instead, state decisions follow the teachings and rules announced in the United States Supreme Court's seminal decision of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In order to effectuate the purpose behind the constitutional protection, the accused is entitled to effective assistance of counsel. *Strickland*, 466 U.S. at 686.

10

Under *Strickland*, courts apply a two-prong test: whether (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. 466 U.S. at 690-2. A defendant must satisfy both prongs of the ineffective assistance of counsel test. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996), *overruled on other grounds by Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). If one prong of the test fails, we need not address the remaining prong. *Hendrickson*, 129 Wn.2d at 78.

To prevail on an ineffective assistance of counsel claim, the defendant must show that after considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *McFarland*, 127 Wn.2d at 334–35. Such a standard echoes the standard of care applied in a civil legal malpractice suit. *See Hizey v. Carpenter,* 119 Wn.2d 251, 261, 830 P.2d 646 (1992) ("[A]n attorney must exercise the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law in th[e] jurisdiction."). A claim that trial criminal counsel was ineffective does not survive if trial counsel's conduct can be characterized as legitimate trial strategy or tactics. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

Wilson claims his counsel should have submitted an unwitting possession jury instruction. "Failure to request an instruction on a potential defense can constitute ineffective assistance of counsel." *In re Pers. Restraint of Hubert*, 138 Wn. App. 924, 929, 158 P.3d 1282 (2007). To prevail on an ineffective assistance of counsel claim for failure to propose a jury instruction, Wilson must show that (1) had counsel requested the instruction, the trial court likely would have given it and (2) defense counsel's failure to request the instruction was not a legitimate tactical decision. *State v. Powell*, 150 Wn. App. 139, 154-55, 206 P.3d 703 (2009). We will only address the second requisite.

11

With a personal restraint petition, the defendant may submit evidence or facts not in the existing trial record to support his claim of ineffective assistance of counsel. *McFarland*, 127 Wn.2d at 335. But because Wilson asserts his claim on direct challenge to his conviction, we dol not consider matters outside the trial record. *McFarland*, 127 Wn.2d at 335. We cannot now ask trial counsel his reasons for not objecting to the trial court's removal of the unwitting possession language from the controlled substance possession instruction or for his failure to propose an unwitting possession instruction. Presumably, if a tactic is reasonable, we deny the claim of ineffective assistance of counsel, even if defense counsel never considered the tactic. We give great deference to trial counsel's performance and begin our analysis with a strong presumption that counsel was effective. *Strickland*, 466 U.S. at 689; *McFarland*, 127 Wn.2d at 335.

To convict Wilson of unlawful possession of a controlled substance, the State had to prove beyond a reasonable doubt that he possessed a controlled substance without a valid prescription or other authorization. RCW 69.50.4013(1). Possession may be actual or constructive. *Staley*, 123 Wn.2d at 798. To "ameliorate[ ] the harshness of [the] strict liability" nature of the crime, a defendant may assert the affirmative defense of unwitting possession. *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004). "To establish the defense, the defendant must prove, by a preponderance of the evidence, that his or her possession of the unlawful substance was unwitting." *State v. Balzer*, 91 Wn. App. 44, 67, 954 P.2d 931 (1998). Usually, carrying the burden of proof requires the defendant's testimony that he was not aware of the presence of the controlled substance. In this case, Wilson would likely have needed to testify that he saw the cigarette packet, that it was not his, and that he assumed the packet contained only cigarettes. He also would have needed to concede that he possessed the packet.

12

We hold that a legitimate strategic reason for withholding the unwitting possession instruction is the need for a defendant to testify to meet his burden of proof on the defense of unwitting possession. Under this justification, only Wilson could testify to his lack of knowledge of the presence of methamphetamine in the cigarette package. Yet, Wilson's testifying would open him to cross-examination by the prosecution. The right to avoid testifying is an important constitutional right. Counsel may have legitimately weighed the risk of testifying with the need for an unwitting possession instruction, since counsel could still argue the lack of actual possession.

We affirm Ortegon's and Wilson's theft convictions. We reverse Ortegon's unlawful possession of a controlled substance conviction and remand to the trial court to dismiss this count with prejudice, but we affirm Wilson's conviction on this charge.

_____
FEARING, J.

We concur:

_____
HUNT, J.

_____
BJØRGEN, J.

13