264 P.3d 575 (2011)
STATE of Washington, Respondent,
v.
Samuel E. FERGUSON, III, Appellant.
No. 39810-9-II.
Court of Appeals of Washington, Division 2.
October 18, 2011.
*576 John A. Hays, Attorney at Law, Longview, WA, for Appellant.
Rachael Rogers Probstfeld, Clark County Prosecuting Attorney's Office, Vancouver, WA, for Respondent.

OPINION PUBLISHED IN PART
PENOYAR, C.J.
¶ 1 Samuel E. Ferguson III appeals his convictions from two trials for one count of first degree robbery with a firearm enhancement, two counts of first degree kidnapping with firearm enhancements, and one count of attempting to elude a pursuing police vehicle. He argues that the trial court gave an erroneous accomplice liability instruction and that the accomplice liability statute is unconstitutionally overbroad. He also asserts that the trial court violated his right to a timely trial under CrR 3.3 when it granted his codefendant's continuance motion and denied Ferguson's motion to sever his trial. Further, he argues that the evidence is insufficient to support his first degree kidnapping convictions. Finally, in his statement of additional grounds (SAG),[1] Ferguson argues that his right to a speedy trial under the Sixth Amendment of the United States Constitution was violated. We affirm.

FACTS

I. BACKGROUND
¶ 2 On May 21, 2008, between 4:00 and 5:00 A.M., two men, wearing dark clothing and stocking hats with cutout eyeholes over their faces, entered a Shari's restaurant in Vancouver. One of the men pointed a gun at the chef, Javier Rivera, and directed him and the baker, Roberta Damewood, into the mop closet. The man told Damewood to lie face down on the floor. He then instructed Rivera to exit the mop closet and lie on the floor. Damewood estimated that she was in the mop closet between five and ten minutes.
¶ 3 The second man approached Regina Bridges, who was working as a waitress and hostess. He pointed a semi-automatic handgun at Bridges, grabbed the back of her shirt, and directed her to the kitchen. Bridges used her "mag card" to open the cash register, and the man reached in, took bills and rolls of coins from the machine, and stuffed the money into his pocket. 3B Report of Proceedings (RP) at 374. Bridges saw brown skin between the man's shirt and hat, leading her to believe that he was African American. Bridges also noted that the man wore white cotton gloves with blue piping. The two men then ran out of the building and entered an idling black Lincoln Town Car. The car left the parking lot at a normal speed. Bridges called 911.
¶ 4 Dispatch notified the police of the incident and reported that the suspects had departed in a black Town Car. Police officers located a Town Car and followed it as it merged onto northbound 1-5. Clark County Deputy Sheriff Thomas Yoder turned on his patrol vehicle's sirens and lights and followed the Town Car as it exited 1-5 and drove through a stripmall parking lot. The Town Car passed a detective, who saw the driver and later identified him as Ferguson. An occupant of the vehicle threw a grey stocking cap and a loaded handgun out of the Town Car. The Town Car then merged back onto 1-5 and drove north at speeds of around 100 miles per hour.
*577 ¶ 5 Cowlitz County Sheriff's deputies placed a spike strip on the highway. The Town Car struck the spike strip and, with deflated tires, exited the Interstate and crashed into a median in Longview. Three African American men ran from the vehicle.
¶ 6 Officers followed the men. The officers first located John Lanell Fitzpatrick and took him into custody. One of the men, later identified as Albert Jamaal Youngblood, slipped and fell as he ran from the police officers. Officers pinned Youngblood, who was wearing a dark hooded sweatshirt and black jeans, to the ground, handcuffed him, and found a black ski mask and roll of nickels on the ground underneath him. Youngblood also had a wad of cash stuffed in his pocket. Officers located Ferguson hiding behind a couch on a nearby porch and took him into custody.
¶ 7 Officers found a roll of dimes on the sidewalk outside of the Lincoln Town Car. The police searched the vehicle and found a pair of white gloves and a roll of pennies. DNA (deoxyribonucleic acid) testing linked Youngblood to the black cap found underneath him at the time of his arrest.

II. PROCEDURAL HISTORY
¶ 8 On May 27, 2008, the State jointly charged Ferguson, Youngblood, and Fitzpatrick with one count of first degree robbery with a firearm enhancement,[2] two counts of first degree kidnapping with firearm enhancements,[3] and attempting to elude a pursuing police vehicle.[4] The information identified Bridges as the victim of the robbery charge and identified Damewood and Rivera as the victims of the first degree kidnapping charges.
¶ 9 On June 5, the trial court arraigned Ferguson and scheduled trial for July 28. On July 10, Ferguson signed a speedy trial waiver and agreed to a new commencement date of September 4. The trial court rescheduled trial for November 3, 2008.
¶ 10 According to Ferguson,[5] on October 27, over Ferguson's objection, Ferguson's defense counsel requested another continuance to allow additional time for preparation. The trial court granted the continuance and scheduled a new trial date for December 15.
¶ 11 On December 11, Ferguson's codefendant, Youngblood, requested a continuance.[6] Ferguson and Fitzpatrick objected to the continuance and moved to sever their trials from Youngblood's. Ferguson's counsel indicated that, if the trial court granted the continuance, he would not be available for trial until the beginning of February 2009. Citing judicial economy, the State's position, and the fact that Youngblood faced life imprisonment, the trial court granted a continuance, denied the motion to sever, and rescheduled trial for February 9, 2009.[7] Further, the trial court also noted that due to the facts and circumstances indicated by the probable cause statements and police reports, "this is something that cries out to be tried together." 2 RP at 152. Joint trial for the three codefendants began on February 9. After the State rested its case, Fitzpatrick's counsel renewed his motion to sever.
¶ 12 The jury found all three codefendants guilty of the first degree robbery of Bridges, with a firearm enhancement, and attempting to elude a pursuing police vehicle; however, *578 the jury was hung on the first degree kidnapping charges. On retrial, a second jury found Ferguson guilty of two counts of first degree kidnapping, with firearm enhancements. The jury instructions and verdict forms named Rivera and Damewood as the victims of the kidnappings. Ferguson appeals.

ANALYSIS

ACCOMPLICE LIABILITY STATUTE
¶ 13 Ferguson argues that the accomplice liability statute, RCW 9A.08.020, is unconstitutionally overbroad because it criminalizes constitutionally protected speech in violation of the First and Fourteenth Amendments to the United States Constitution. We disagree.
¶ 14 Under RCW 9A.08.020(3)(a), a person is guilty as an accomplice if "[w]ith knowledge that it will promote or facilitate the commission of the crime," he "[s]olicits, commands, encourages, or requests [another] person to commit [the crime]" or "[a]ids or agrees to aid such other person in planning or committing [the crime]." The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. The First Amendment applies to the states through the Fourteenth Amendment. Kitsap County v. Mattress Outlet, 153 Wash.2d 506, 511, 104 P.3d 1280 (2005).
¶ 15 A statute is unconstitutionally overbroad if it prohibits a substantial amount of protected speech and conduct. City of Seattle v. Huff, 111 Wash.2d 923, 925, 767 P.2d 572 (1989). A statute that regulates behavior, not pure speech, will not be overturned "unless the overbreadth is `both real and substantial in relation to the ordinance's plainly legitimate sweep.'" City of Seattle v. Eze, 111 Wash.2d 22, 31, 759 P.2d 366 (1988) (quoting O'Day v. King County, 109 Wash.2d 796, 804, 749 P.2d 142 (1988)). The constitutional guarantee of free speech does not allow a State to forbid the advocacy of a law violation "except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969).
¶ 16 In State v. Coleman, 155 Wash.App. 951, 961, 231 P.3d 212 (2010), review denied, 170 Wash.2d 1016, 245 P.3d 772 (2011), Division One of this court held that Washington's accomplice liability statute is not unconstitutionally overbroad. The court reasoned:
[T]he accomplice liability statute Coleman challenges here requires the criminal mens rea to aid or agree to aid the commission of a specific crime with knowledge the aid will further the crime. Therefore, by the statute's text, its sweep avoids protected speech activities that are not performed in aid of a crime and that only consequentially further the crime.
Coleman, 155 Wash.App. at 960-61, 231 P.3d 212. Because the statute's language forbids advocacy directed at and likely to incite or produce imminent lawless action, it does not forbid the mere advocacy of law violation that is protected under the holding of Brandenburg. Agreeing with and adopting Division One's rationale in Coleman, we also hold that the accomplice liability statute is not unconstitutionally overbroad.
¶ 17 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.
We concur: HUNT, and WORSWICKI, JJ.
NOTES
[1] RAP 10.10.
[2] RCW 9A.08.020(3); RCW 9A.56.190, .200; RCW 9.94A.533(3); former RCW 9.94A.602 (1983).
[3] RCW 9A.08.020(3); RCW 9A.40.020; RCW 9.94A.533(3), former RCW 9.94A.602.
[4] RCW 9A.08.020(3); RCW 46.61.024(1).
[5] Ferguson cites Appendix A for the facts relating to the October 27 request for a continuance. The record does not contain the transcript from this hearing; however, the State "accepts the statement of facts as set forth by the defendant." Resp't's Br. at 1.
[6] Youngblood requested the continuance in order to review the results of DNA testing. His defense counsel argued, "I think it would be highly prejudicial at this point in time for Mr. Youngblood to proceed to trial without at least having an opportunity to examine and look at that DNA to see if there's a possible suppression motion, whether we need an expert statistician." 2 RP at 132.
[7] The trial court rescheduled the trial for this date due to holidays and scheduling conflicts.