FILED
COURT OF APPEALS
DIVISION II

2014 APR 29 AM 8: 42

STATE OF WASHINGTON

BY_____
       DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON | No. 43549-7-II |
| Respondent, | (Consolidated with Nos. 43562-4-II, 44390-2-II, 43654-0-II) |
| v. | |
| MICHAEL LYN HORNER, | |
| Appellant. | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, | |
| Respondent, | |
| v. | |
| JOHNNY EUGENE DUNHAM, | |
| Appellant. | |
| STATE OF WASHINGTON, | |
| Respondent, | |
| v. | |
| LYNITA WYNNE GARCIA, | |
| Appellant. | |

Consol. Nos. 43549-7-II / 43562-4-II / 44390-2-II / 43654-0-II

STATE OF WASHINGTON,

                Respondent,

v.

KIMBERLY OLGA COLE,

                Appellant.

JOHANSON, J. — A jury found Kimberly O. Cole, Johnny E. Dunham, Lynita W. Garcia, and Michael L. Horner guilty of second degree burglary, first degree trafficking in stolen property, and third degree theft. They now appeal from their convictions.[1] Horner, Dunham, and Cole each challenge the constitutionality of our accomplice liability statute and the adequacy of their charging information regarding their trafficking charges. Further, each appellant alleges that the State committed prosecutorial misconduct relating to their second degree burglary convictions or, in the alternative, that insufficient evidence supported those convictions. Additionally, Garcia claims that the State failed to offer sufficient evidence to support her convictions and Cole claims ineffective assistance of counsel.

We accept the State's concession that insufficient evidence supports one of the alternative means of committing second degree burglary. Accordingly, we reverse the burglary convictions, and remand for retrial.[2] We affirm the remaining convictions because our accomplice liability

---

[1] On our own motion, we consolidate Cole's appeal with the consolidated appeals of Dunham, Garcia, and Horner.

[2] We granted Horner's and Garcia's motions to adopt Dunham's argument that the State produced insufficient evidence on one of the alternative means of proving second degree burglary. Order Granting Motions to Adopt Argument of Co-Appellant, No. 43549-7-II Spindle, (March 6, 2014).

statute is constitutional, the charging documents were not deficient, sufficient evidence supports

Garcia's remaining convictions, and Cole's counsel provided effective assistance of counsel.

FACTS

In October 2011, Thurston County Sheriff's Deputy Jason Casebolt responded to a 911

burglary call. The property owner had died and the now-vacant property, including a home,

detached barn, open carport, and storage container, had been subject to recent burglaries. The

deceased had collected scrap metal and equipment that attracted looters and metal scrappers to

the property. The main access driveway was gated, locked, and featured a no trespassing sign.

The property had a back road, which was also posted with a no trespassing sign, although it had

been knocked to the side. Upon arriving, Deputy Casebolt saw a man—later identified as the

911 caller, William White—sitting in his vehicle which was parked behind Horner's vehicle,

preventing it from moving. White, the property's caretaker, called 911 when he saw an unknown

vehicle with four individuals—later identified as Cole, Dunham, Garcia, and Horner—walking in

and around the carport and the opened storage container.

The night before this incident, White had staged certain items so he could see whether

items had been moved or taken. The next day, White noticed the no trespassing sign was no

longer where he had posted it the night before. White saw Horner walk out of the carport, turn

back toward the carport and throw something inside it. Horner immediately got in his truck and

started to back it up. At this time, White saw Dunham exit the storage container, and hurry to the

passenger side of Horner's truck. To prevent Horner from leaving, White positioned his truck to

block Horner's truck. White then saw Cole and Garcia walk out of the storage container towards

Horner's truck; according to White, both women looked nervous, scared, and hurried. White

recognized several items from the property in Horner's truck. Deputy Casebolt obtained a search

3

warrant for Horner's truck and found scrap metal receipts with the appellants' names on them. The State charged the defendants with second degree burglary, first degree trafficking in stolen property, and third degree theft.

At trial, White testified that only he and realtors were authorized to be on the property. Employees from two scrap metal recyclers testified that they recognized the appellants as metal scrappers who had sold scrap metal for cash. Kimberly Knecht, the manager at Valley Recycling, testified that after the incident, Garcia phoned Valley Recycling asking if the police had called about her. Garcia wanted to know what the recycling center told the police. Commercial Metal Recycle's Michael Holman testified that Cole usually visited the recycle center with Dunham. Additionally, Deputy Casebolt found Dunham's, Garcia's, and Horner's names on scrap metal recycling receipts in Horner's truck.

Deputy Casebolt testified that a very nervous Cole explained to him that she was at the deceased's property because her friend had called her to go clean it up because it was in foreclosure. Deputy Casebolt said that Dunham and Horner told him they were just there to ride along or help Cole. Though Cole initially told Deputy Casebolt that they were at the property to clean it for a foreclosure sale, Deputy Casebolt testified that foreclosure cleanup businesses typically have business licenses, equipment, uniforms, keys, or other indicia of a legitimate operation, which this group lacked.

Dunham, Garcia, and Horner all testified that they were at the property due to Cole's foreclosure clean-up bid. Dunham also admitted that he had seen the no trespassing sign posted at the main entrance at the front of the property. Garcia testified that she never entered the storage container and never picked anything up. Horner testified that the tools in his truck were his own and not taken from the property. Cole did not testify.

4

The trial court instructed the jury that it could find the defendants guilty as principals or accomplices.

During rebuttal closing, the prosecutor argued,

> I'm going to ask you to convict all four of these defendants with burglary in the second degree. There is no question that they entered a building, any of them. The carport constitutes a building, the storage container constitutes a building, and the fenced area, that yard, it does constitute a building by definition. There's nothing in your instructions that says the fencing must touch all the way around, it says fenced area and that's it, and I submit to you that's exactly what occurred here.

5 Report of Proceedings at 808-09. The jury found the defendants guilty as charged. They now appeal.

## ANALYSIS

### I. ACCOMPLICE LIABILITY STATUTE, RCW 9A.08.020

Cole, Horner, and Dunham argue that Washington's accomplice liability statute, RCW 9A.08.020, is unconstitutionally overbroad. The appellants argue that Washington's accomplice liability statute does not meet the standard set forth in *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969). Because "aid" is not defined in the statute, the appellants argue that the statute criminalizes speech other than that "'directed to inciting or producing imminent lawless action.'" Br. of Appellant (Horner) at 8 (quoting *Brandenburg*, 395 U.S. at 447). Because we have consistently held that our accomplice statute is not unconstitutionally overbroad in this respect, we disagree with the appellants' argument.

Constitutional questions are issues of law and we review them de novo. *State v. Gresham*, 173 Wn.2d 405, 419, 269 P.3d 207 (2012).

In *State v. Ferguson*, we rejected this same challenge to RCW 9A.08.020(3)(a). 164 Wn. App. 370, 375-76, 264 P.3d 575 (2011) (citing *State v. Coleman*, 155 Wn. App. 951, 960-61, 231

Consol. Nos. 43549-7-II / 43562-4-II / 44390-2-II / 43654-0-II

P.3d 212 (2010), *review denied*, 170 Wn.2d 1016 (2011)), *review denied*, 173 Wn.2d 1035 (2012). In *Coleman*, Division One of this court held that

> [t]he accomplice liability statute . . . requires the criminal *mens rea* to aid or agree to aid the commission of a specific crime with knowledge that the aid will further the crime. Therefore, by the statute's text, its sweep avoids protected speech activities that are not performed in aid of a crime and that only consequentially further the crime.

155 Wn. App. at 960-61. In *Ferguson*, we adopted the *Coleman* reasoning and addressed the *Brandenburg* standard, holding that "[b]ecause the statute's language forbids advocacy directed at and likely to incite or produce imminent lawless action, it does not forbid the mere advocacy of law violation that is protected under the holding of *Brandenburg*." 164 Wn. App. at 376. The appellants here do not demonstrate why we should not adhere to our *Ferguson* decision and analysis. Accordingly, the constitutional challenge to the accomplice liability statute fails.

## II. ADEQUACY OF INFORMATION

Next, Cole, Horner, and Dunham argue that their charging information provided inadequate notice for the trafficking charge, violating their Sixth and Fourteenth Amendment rights as well as their article I, section 22 rights under the Washington Constitution. They assert that the information failed to allege that they "knowingly" trafficked stolen property. Because the charging information included all of the offense's essential elements, this argument fails.

### A. STANDARD OF REVIEW AND RULES OF LAW

We review challenges to the sufficiency of a charging document de novo. *State v. Williams*, 162 Wn.2d 177, 182, 170 P.3d 30 (2007). The Sixth Amendment to the United States Constitution provides in part, "In all . . . prosecutions, the accused shall . . . be informed of the nature and cause of the accusation." Article I, section 22 of the Washington Constitution

6

provides in part, "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him."

An appellant may challenge the constitutional sufficiency of a charging document for the first time on appeal. *State v. Kjorsvik*, 117 Wn.2d 93, 102, 812 P.2d 86 (1991). But where the appellant challenges the information's sufficiency for the first time on appeal, we construe the document liberally in favor of validity. *State v. Brown*, 169 Wn.2d 195, 197, 234 P.3d 212 (2010). Under this liberal construction rule, we will uphold the charging document if an apparently missing element may be "fairly implied" from the document's language. *Kjorsvik*, 117 Wn.2d at 104. We ask, "(1) [D]o the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?"[3] *Kjorsvik*, 117 Wn.2d at 105-06. We read the charging document as a whole, according to common sense and including implied facts. *State v. Nonog*, 169 Wn.2d 220, 227, 237 P.3d 250 (2010).

### B. ANALYSIS

To establish first degree trafficking in stolen property, the State must prove that a person "knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property." RCW 9A.82.050(1). "Traffic" means to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy, receive, possess, or obtain control of stolen property with intent to sell,

---

[3] Appellants do not address whether, if "knowingly" can be fairly implied from the charging document, there was nonetheless actual prejudice. We decide cases only on the basis of issues set forth by the parties in their briefs. RAP 12.1(a); *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992). Accordingly, we do not discuss the second prong of *Kjorsvik*.

transfer, distribute, dispense, or otherwise dispose of the property to another person. RCW 9A.82.010(19).

> Here, the appellants' charging information stated that each defendant
>
> did knowingly initiate, organize, plan, finance, direct, manage, or supervise the theft of property for sale to others, and/or did knowingly sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person or to buy, receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person.

Clerk's Papers (CP) (Dunham) at 6; CP (Cole) at 3; CP (Horner) at 4; CP (Garcia) at 6.

The appellants contend, however, that the information failed to include "knowingly" before the last alternative listed ("or to ____ buy, receive, possess, or obtain control of stolen property"), whereas each of the other listed alternatives included "knowingly." Because the appellants did not challenge the charging documents at trial, they must show that the charging documents failed to include a necessary fact, and that the absence of the necessary fact actually prejudiced them at trial. *See Kjorsvik*, 117 Wn.2d at 105-06.

We review the charging documents to see whether the missing element could be fairly implied from the document's language. *Kjorsvik*, 117 Wn.2d at 104. Here, the charging document twice stated that in order to be found guilty of trafficking in stolen property, "knowingly" must be proved. The appellants, however, want to disconnect the phrasing following "or otherwise dispose of stolen property to another person" and before "or to buy, receive, possess." But this requires a strained reading of the information's language because there is no punctuation indicating that these two phrases are intended to be read separately. One

can fairly infer that the second "knowingly" in the charging document modified each of the verbs that followed it such that "knowingly" is fairly implied when read in context.[4]

Absent a showing of an inadequate charging document, the appellants do not demonstrate any reversible error.

### III. INSUFFICIENT EVIDENCE OF ALTERNATIVE MEANS OF BURGLARY

Appellants next argue that the prosecutor committed misconduct by misrepresenting the law when she argued that the defendants could be convicted of second degree burglary by entering a partially fenced area. Although the appellants originally characterized the argument as one of prosecutorial misconduct, the appellants agreed with the State that the issue was equally capable of redress on sufficiency grounds. Wash. Court of Appeals oral argument, *State v. Horner et. al*, No. 43549-7-II (Feb. 19, 2014), at 7 min., 15 sec.—7 min., 55 sec. (on file with court).

A defendant commits second degree burglary when she or he enters or remains unlawfully in a building other than a vehicle or dwelling, with the intent to commit a crime therein. RCW 9A.52.030(1). A "building" includes any dwelling, fenced area, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale, or deposit of goods. RCW 9A.04.110(5). When alternative

---

[4] Furthermore, in *Kjorsvik*, the court concluded that the accused suffered no actual prejudice because the "to convict" instruction contained the element that was missing from the charging information. *Kjorsvik*, 117 Wn.2d at 111. Similarly here, the "to convict" jury instruction regarding the trafficking charge expressly provided that in order to convict the appellants for trafficking stolen property, the jury needed to find that (1) "the defendant or an accomplice knowingly trafficked in stolen property"; and (2) "[t]hat the defendant knew the property was stolen." CP (Dunham) at 64; CP (Horner) at 25-28. Thus, the trial court instructed the jury that any conviction for trafficking in stolen property required proof beyond a reasonable doubt that the appellants "knowingly" trafficked in stolen property.

means of committing a single offense are presented to a jury, each alternative means must be supported by substantial evidence in order to safeguard a defendant's right to a unanimous jury determination. *State v. Garcia*, __ Wn.2d __, 318 P.3d 266, 271 (2014).

Here, the trial court instructed the jury, "Building, in addition to its ordinary meaning, includes any fenced area or cargo container." CP (Horner) at 14. Accordingly, the jury was instructed that it could convict the defendants if it determined that they entered or remained unlawfully in either a building on the property, a fenced area, or in the cargo container, with the intent to commit a crime.

The State concedes that no evidence demonstrates that a combination of fencing and structures enclosed the entire property as is required under *State v. Engel*, 166 Wn.2d 572, 210 P.3d 1007 (2009). The *Engel* court held that "fenced area" included curtilage that is either completely enclosed by fencing or is enclosed by a combination of fencing and other structures. 166 Wn.2d at 580. The partially fenced area without structures filling gaps in the fencing did not create an enclosure and thus did not constitute a "building." Therefore, sufficient evidence did not support the fenced area means by which the jury could have found the defendants guilty in its general verdict. Accordingly, we accept the State's concession and reverse and remand the second degree burglary convictions.[5]

---

[5] Because we reverse on this ground we do not reach the appellants' prosecutorial misconduct argument.

## IV. GARCIA'S INSUFFICIENT EVIDENCE CLAIMS

Garcia argues that the State offered insufficient evidence for the jury to find her guilty as a principal or an accomplice of second degree burglary,[6] first degree trafficking in stolen property, and third degree theft. We disagree.

### A. STANDARD OF REVIEW AND RULES OF LAW

We review claims of insufficient evidence to determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We draw all reasonable inferences from the evidence in favor of the State and against the defendant. *Salinas*, 119 Wn.2d at 201. A sufficiency challenge admits the truth of the State's evidence and all reasonable inferences from it. *State v. Theroff*, 25 Wn. App. 590, 593, 608 P.2d 1254, *aff'd*, 95 Wn.2d 385, 622 P.2d 1240 (1980). We leave credibility determinations to the fact finder and do not review them on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

### B. SECOND DEGREE BURGLARY

A defendant commits second degree burglary when she enters or remains unlawfully in a building other than a vehicle or dwelling with the intent to commit a crime therein. RCW 9A.52.030(1). A "building" includes any dwelling, fenced area, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale, or deposit of goods. RCW 9A.04.110(5). Therefore, the State was required to prove that Garcia (1) entered or remained unlawfully in a building other than a vehicle or

---

[6] Although we reverse and remand Garcia's burglary conviction for retrial, we address Garcia's argument contesting the sufficiency of the evidence against her because Garcia would be entitled to dismissal with prejudice if she were to prevail on those grounds.

dwelling, and (2) that she did so with the intent to commit a crime against a person or property therein. Alternatively, the State could also prove that Garcia was criminally liable for the burglary as an accomplice by showing that Garcia, with knowledge that it would promote or facilitate the commission of the crime, either (1) solicited, commanded, encouraged, or requested the other person to commit the crime; or (2) aided or agreed to aid such other person in planning or committing it. RCW 9A.08.020; *State v. Roberts*, 142 Wn.2d 471, 502, 14 P.3d 713 (2000).

Here, the State presented evidence from which any rational jury could have found that Garcia engaged in second degree burglary as a principal or an accomplice beyond a reasonable doubt. Garcia was seen exiting the storage container on property that featured a no trespassing sign and on which no one other than White and realtors were allowed. Because she was trespassing and was not licensed or otherwise privileged to be inside the container, Garcia's entry was unlawful. RCW 9A.52.010(5). White noticed that Garcia appeared nervous as she exited the container and also that she hurried towards Horner's truck, which contained items previously removed from the property without authorization. Knecht testified that Garcia was known as a regular metal recycler at Valley Recycling, and following the October 15 incident at the property involved here, Garcia called Valley Recycling to ask someone whether the police had called and if they had told the police anything about her. Viewing this evidence in a light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that Garcia and her associates entered the container unlawfully with the intent to take property.[7]

---

[7] However, as discussed above, we accept the State's concession that insufficient evidence supports one of the alternative means of conviction, and we reverse and remand Garcia's second degree burglary conviction on this ground.

12

## C. First Degree Trafficking in Stolen Property

To prove first degree trafficking in stolen property, the State must offer evidence that Garcia, either as a principal or an accomplice, knowingly initiated, organized, planned, financed, directed, managed, or supervised the theft of property for sale to others, or knowingly trafficked in stolen property. RCW 9A.82.050. "Trafficking" means to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy, receive, possess, or obtain control of stolen property with intent to sell, transfer, distribute, dispense, or otherwise dispose of property to another person. RCW 9A.82.010(19).

Here, the State presented ample evidence from which the jury could reasonably infer that Garcia engaged as a principal or accomplice in trafficking stolen property. For example, White testified that no one besides himself and realtors had permission to be on the gated property with posted no trespassing signs, but he saw Garcia walking out from inside the property's storage container. In addition to seeing Garcia exit the container, White saw Garcia's associates in the carport and storage container, and he saw Horner toss something back into the carport when Horner first saw White. White characterized Garcia as looking nervous and scared when she exited the storage container and saw him, and then she hurried toward Horner's truck. Deputy Casebolt and White both explained that since the prior night, someone had removed items from the property, and some of those metal items, including tools, were now in the truck.

Though Cole initially told Deputy Casebolt that they were at the property to clean it for a foreclosure sale, Deputy Casebolt testified that foreclosure clean-up businesses typically have business licenses, equipment, uniforms, keys, or other indicia of a legitimate operation. Here, Garcia and her associates lacked any indicia of a legitimate business; moreover, the home was not in foreclosure.

13

Also, Deputy Casebolt found receipts in Horner's truck showing that Garcia, as well as Horner and Dunham, had recently sold scrap metal to metal recyclers. Knecht testified that Garcia was known as a regular metal recycler at Valley Recycling; and following the October 15 incident at the property involved here, Garcia called Valley Recycling to ask someone whether the police had called and if they had told the police anything about her.

Viewing this evidence in a light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that Garcia and her associates knowingly sold stolen property for scrap, thus committing first degree trafficking in stolen property. Accordingly, we affirm Garcia's first degree trafficking conviction. *See Salinas*, 119 Wn.2d at 201.

### D. THIRD DEGREE THEFT

To prove third degree theft, the State was required to offer evidence that Garcia committed theft of property or services which did not exceed $750 in value. RCW 9A.56.050. In this context, "theft" means to wrongfully obtain or exert unauthorized control over the property of another or the value thereof with intent to deprive the owner of such property. RCW 9A.56.020(1)(a).

Here, the State presented ample evidence from which the jury could find that Garcia engaged as a principal or accomplice in theft. Again, White testified that no one besides himself and realtors had permission to be on the gated property with posted no trespassing signs, but he spotted Garcia walking out from inside the property's storage container. White characterized Garcia as looking nervous and scared when she exited the storage container and saw White, and

14

then she hurried toward Horner's truck—a truck which had license plates that did not match its vehicle identification number. Deputy Casebolt and White both explained that since the prior night, someone had removed items from the property, and some of those missing metal items, including tools, were now in Garcia's associate's truck.

Viewing this evidence in a light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that Garcia and her associates trespassed onto the property and were taking metal items, including tools. Therefore, Garcia wrongfully obtained control over the property of another and she did so with the intent to deprive the owner of that property. RCW 9A.56.020(1)(a). Accordingly, we affirm Garcia's third degree theft conviction. *See* *Salinas*, 119 Wn.2d at 201.

## V. INEFFECTIVE ASSISTANCE

Cole argues that her counsel provided ineffective assistance when he failed to (1) adequately investigate this case and (2) call a witness that would have rebutted one of the State's witnesses. Because Coles's argument rests on matters outside the record, we do not consider it. Cole contends that her counsel offered ineffective assistance because he failed to adequately investigate. She asserts that she has never been to Commercial Metal Recycle and that had her attorney adequately investigated, he would have been able to prove that she had never been there because no receipts ever linked her to that recycle center.

Cole's argument that there is evidence that (1) Cole has never been to Commercial Metal Recycle, (2) her attorney failed to investigate, and (3) there are no receipts linking her to that

15

recycle center rests on evidence outside the record. But we may consider only arguments that are supported by the record before us and we cannot address matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 338 n.5, 899 P.2d 1251 (1995). Accordingly, we do not consider this argument further.

Next, Cole argues that defense counsel failed to call another officer besides Deputy Casebolt who was at the property when Deputy Casebolt arrived. Cole contends that this unidentified officer would have testified that Cole and Garcia did not emerge from the storage container, but instead came from behind it after relieving themselves. She asserts that the defendants asked their attorneys to call this unidentified officer, but "they said we didn't need them." Statement of Additional Grounds (Cole) at 3. Because neither the unidentified officer's knowledge nor the defense counsel's discussion with the appellants about calling this unidentified officer appear in the record, Cole presents no argument based on facts in the record. Because Cole's argument is not supported by the record, we decline to consider it.

Cole also contends that defense counsel failed to adequately investigate because he failed to inquire about Horner's deceased uncle's wrecking yard and had he investigated, he would have learned that the now-closed wrecking yard had plenty of scrap metal that the appellants were legitimately recycling. Contrary to Cole's assertion, however, his defense counsel called a witness who testified that Horner's uncle's defunct wrecking yard had plenty of scrap metal. Cole does not demonstrate that defense counsel failed to adequately investigate or uncover Horner's uncle's defunct wrecking yard. Accordingly, Cole's ineffective assistance of counsel claim fails.

In conclusion, we reverse each appellant's second degree burglary conviction and remand for a retrial. All other convictions are affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

WORSWICK, C.J.

LEE, J.

17