## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                              Respondent,<br><br>        v.<br><br>KYLE ANTHONY PAGEL,<br><br>                              Appellant | No. 54276-5-II<br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — Kyle Pagel appeals his convictions for one count of second degree burglary and one count of first degree trafficking in stolen property. Pagel argues that he received ineffective assistance of counsel because his trial counsel failed to conduct a reasonable investigation, and that the accomplice liability statute, RCW 9A.08.020, is unconstitutionally overbroad and in violation of the First and Fourteenth Amendments. We hold that Pagel did not receive ineffective assistance of counsel. We do not reach the issue of whether the accomplice liability statute is overbroad because Pagel raises the issue for the first time on appeal and cannot show a manifest constitutional error. Accordingly, we affirm.

FACTS

I. BACKGROUND

In May 2019, Kyle Pagel, Brad Conners, and Jason Bennet went to a burned-out building to collect metal and sell it. Evan Krill, a neighbor to the building, saw three men and a black Chevrolet pickup truck approach the building. Krill then observed one of the men, wearing a red shirt, and another wearing black emerge from the building carrying pipe. Krill contacted the

sheriff's department and described what he saw. The three men then put the pipe in the pickup truck and left in it.

Krill then drove to Sutter Metals, a nearby scrap metal yard. There, Krill saw a black Chevrolet pickup truck and one of the men he saw at the building. Krill again called the sheriff's department and reported what he saw at Sutter Metals. Krill identified Pagel as the man in the red shirt.

Pagel sold copper pipe to Sutter Metals for $85.15; $30 in cash and $55.15 in a check. Thurston County Sheriffs arrived at Sutter Metals and stopped the black pickup truck. Bennett and Conners were in the truck, and sheriff deputies later discovered Pagel hiding on the Sutter Metals property. Sheriff deputies arrested Pagel, and the State charged him with one count of burglary in the second degree and one count of trafficking in stolen property in the first degree. Pagel was charged with burglary as both a principle under RCW 9A.52.030, and as an accomplice under and RCW 9A.08.020.

## II. TRIAL

The case proceeded to trial in October 2019. The day before trial, Pagel's counsel requested a continuance, stating:

> [M]y client is asking to continue. He did give me names and numbers of potential defense witnesses who have had similar dealings as are alleged in this case with a codefendant, Bradley Conners. I was able to reach and talk to one of those witnesses. I've left phone messages for the others.

Verbatim Report of Proceedings (VRP) (Oct. 21, 2019) at 39. The trial court denied Pagel's motion.

54276-5-II

On the morning of the first day of trial, Pagel again requested a continuance. Pagel asked the court for time to call Conners as a witness to provide the court with information "material to the defense." VRP (Oct. 22, 2019) at 5-6. Counsel stated:

> I was not able to get a recorded statement. I was not able to subpoena him. I did not have a phone number or a location of his home or address that was good information until yesterday. My understanding is that if Mr. Conners were to testify that his testimony would be material to the defense. This is someone who was disclosed to me earlier. I did not have good contact information at the time. I did not have a phone number for him. My office, by way of my private investigator – my office investigator made contact with him yesterday afternoon and was able to follow up by going out to his place of work and his residence last night. This is newly discovered information. I'm stating that I did not have this contact information until yesterday, and I've attempted to follow up on that.

VRP (Oct. 22, 2019) at 5-6.

According to counsel, his private investigator informed Conners that counsel worked for Pagel, and if Conners testified he may wish to seek his own legal counsel. Counsel explained to the court:

> As an offer of proof, Your Honor, it is my understanding that Mr. Conners would testify as to the material elements of knowing or knowingly as to Mr. Pagel's knowledge as to whether they had permission to go into the building, whether my client's state of mind at the time was that based on a conversation he had had with Mr. Conners that he thought they had permission both to go into the building, to take the scrap and to sell the scrap. My understanding is that Mr. Conners made those disclosures which would be beneficial to the defense if he would take the stand, but I again followed the duties as I see them under the RPCs to advise him he may wish to seek legal counsel. And after receiving that letter I can tell the court that we were not able to get a recorded statement.

VRP (Oct. 22, 2019) at 10.

The State responded:

> So, if that is in fact what Mr. Conners would say, the state would certainly want to interview him and on the record. What he's saying would be used against him most certainly. It would be evidence against Mr. Conners quite certainly. . . . He's going to need counsel.

3

VRP (Oct. 22, 2019) at 12. The trial court denied Pagel's motion for a continuance, stating, "[Q]uite frankly I find it difficult to believe that anyone's going to waive their Fifth Amendment right and make statements on the witness stand that's going to lead to their conviction and charging of this crime." VRP (Oct. 22, 2019) at 13. The trial court also noted, "I don't find it particularly credible that this other individual's going to testify to this effect." VRP (Oct. 22, 2019) at 13. However, the court noted in its ruling that it would add Conners to the list of potential defense witnesses, and informed the parties that the court would allow Conners to testify if he appeared.

Later in the proceedings, counsel informed the court that his office had served a subpoena on Conners to appear at 1:30 p.m. Counsel also stated that he made arrangements for attorney Preston White to be present to represent Conners should he arrive. White informed the court of his presence in the courtroom to assist Conners.

Later that same day, counsel stated: "Your Honor, I'd like to make a record that Mr. White was here in the courtroom from approximately 1:30 to about 2:20 p.m. During that time it does not appear that Mr. Bradley Conners showed up." VRP (Oct. 22, 2019) at 155.

The owner of the burned-out building testified. He explained that the building suffered a major fire in November, 2018, and was later fenced off. The owner testified that the fence was erected to keep people out of the property. At the time of the burglary, the building was in the process of being reconstructed, and the owner had no plans to remove the plumbing. The owner did not know Pagel, Bennett, or Conners, and had not given them permission to enter the property or remove anything from the property.

4

Pagel then testified that Conners told him they had permission to go in and collect the metal. Pagel testified that he did not go into the building but admitted going onto the property and helping the two other men carry the pipe to the pickup truck. Pagel admitted that he used his I.D. to sell the pipe to Sutter Metals.

The trial court's jury instructions included an instruction on accomplice liability. The accomplice liability instruction stated, in pertinent part:

> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she aids another person in committing the crime. The word 'aid' means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

Clerk's Papers (CP) at 64.

The jury found Pagel guilty of second degree burglary and first degree trafficking in stolen property. Pagel timely appeals.

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

Pagel argues that he was denied effective assistance of counsel because his counsel failed to conduct a timely investigation and secure the attendance of Conners at trial. We disagree.

A.    *Standard of Review*

Ineffective assistance of counsel is a mixed question of law and fact that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To demonstrate ineffective assistance, Pagel must show that (1) defense counsel's performance was deficient, and (2) that the deficient performance resulted in prejudice to the defendant. *State v. Linville*, 191 Wn.2d

513, 524, 423 P.3d 842 (2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984)). The failure to demonstrate either prong ends our inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

B.    *Ineffective Assistance*

To demonstrate deficient performance, Pagel must show on the record on appeal that his counsel's performance was not objectively reasonable based on consideration of all the circumstances. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). We strongly presume counsel's performance was effective and reasonable. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012); *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). The failure to interview certain witnesses may constitute deficient performance. *State v. Jones*, 183 Wn.2d 327, 340, 352 P.3d 776 (2015). "There is no claim for ineffective assistance of counsel when the challenged action goes to a legitimate trial strategy or tactic." *State v. Kolesnik*, 146 Wn. App. 790, 801, 192 P.3d 937 (2008). Accordingly, the threshold for deficient performance is high. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To demonstrate prejudice, Pagel must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Gregory*, 192 Wn.2d 1, 22, 427 P.3d 621 (2018) (quoting *Strickland*, 466 U.S. at 694).

1.    *Pre-trial Investigation*

First, Pagel argues that his counsel was deficient because he should have vigorously pursued an interview with Conners well before trial started. But the record shows that counsel made efforts to reach out to potential defense witnesses but was able to reach only one. Counsel was not able to locate Conners or obtain his contact information until the day before trial. Thus,

counsel could not have interviewed Conners because he could not find him, and Pagel fails to show on this record that counsel was deficient in his efforts to locate witnesses. Moreover, the record shows that once counsel did have Conners's information, counsel had his office investigator contact Conners and interview him. After counsel informed Conners that he may wish to seek his own legal counsel, Conners apparently declined to make a statement. Thus, it is clear from the record that Pagel's counsel pursued an interview with Conners as soon as he had Conners's contact information, and that Conners became uncooperative.

Pagel argues that this case is controlled by *State v. Jones*, 183 Wn.2d at 337. In *Jones*, defense counsel failed to interview three eyewitnesses that were listed in discovery materials. 183 Wn.2d at 337. There, defense counsel offered no reasons for failing to interview the witnesses, despite them being listed in the incident report. *Jones*, 183 Wn.2d at 338. Our Supreme Court determined Jones's defense counsel was deficient, stating that ineffectiveness when counsel does not interview a witness "depends on the reason for the trial lawyer's failure to interview. In *Jones*, trial counsel offered absolutely no reason for failing to interview these three witnesses." 183 Wn.2d at 340.

Pagel's case is distinguishable. Here, counsel reached out to multiple witnesses but could not locate Conners's contact information until the day before trial. Once counsel received the contact information, his office conducted an investigation and attempted to obtain a recorded statement. Thus, the record here shows that Pagel's counsel, unlike in *Jones*, interviewed Conners and attempted to obtain a statement, but Conners became uncooperative. Accordingly, Pagel's trial counsel was not deficient for failing to conduct a pretrial investigation.

2. *Motion for Continuance*

Second, Pagel argues that his trial counsel should have sought a continuance based on his need to locate and interview Conners before trial. In the same paragraph, however, Pagel concedes that his trial counsel obtained a one-week continuance before trial and sought a second continuance the day before trial.[1] Thus, Pagel's counsel was not deficient for failing to seek a continuance.

3. *Recorded Statement*

Third, Pagel argues that his trial counsel should have obtained a recorded statement from Conners and served him with a subpoena before the start of trial. But Conners was under no obligation to consent to a recording. Indeed, counsel's investigator was unable to obtain a recording once Conners was informed that Pagel's counsel could not represent Conners. Additionally, counsel obtained a subpoena for Conners to appear, but Conners did not comply. Under the circumstances, counsel's attempts were reasonable, and his performance was not deficient.

4. *Renewed Request for Continuance*

Pagel argues that his defense counsel was deficient for not renewing his request for a continuance when Conners failed to appear for trial. But this decision falls into defense counsel's trial strategy. Given that the trial court had granted one continuance, denied another on the first day of trial, but accepted adding Conners to Pagel's witness list, it falls within

---

[1] Pagel argues that his trial counsel "never mentioned Conners" in his motion. Br. of Appellant at 10. However, the record on appeal shows that Hansen informed the court: "[M]y client is asking to continue. He did give me names and numbers of potential defense witnesses who have had similar dealings as are alleged in this case with a codefendant, Bradley Conners." VRP (Oct. 21, 2019) at 39.

counsel's tactical discretion of whether or not it was prudent to make another motion to the court after Conners did not show up. Because this argument goes to a legitimate trial strategy, it fails.

5. *Material Witness Warrant*

Finally, Pagel argues that his defense counsel should have sought a material witness warrant for Conners. He argues that he was prejudiced by his counsel's deficient performance because had he been present in court and called as a witness, Conners would have testified that he told Pagel that they had permission to go into the building and retrieve the metal. We disagree.

CrR 4.10(a) provides, in pertinent part:

The [material witness] warrant shall issue only on a showing . . . that
(1) The witness has refused to submit to a deposition ordered by the court pursuant to rule 4.6; or
(2) The witness has refused to obey a lawfully issued subpoena; or
(3) It may become impracticable to secure the presence of the witness by subpoena.

Here, Pagel's trial counsel did not request a material witness warrant, despite Conners failing to appear after he was issued a subpoena. However, even assuming that counsel's decision not to request a material witness warrant during trial proceedings fell below the objective standard of reasonableness, Pagel cannot show prejudice.

Pagel argues that Conners would have testified that he told Pagel they had permission to go into the building, but the only indication that Conners would have so testified is counsel's offer of proof. And counsel arranged for an attorney to represent Conners, undoubtedly to advise Conners of his Fifth Amendment right to remain silent. Had Conners appeared, it is highly unlikely that he would have testified in a manner that incriminated himself. We agree with the trial court when it noted, "I don't find it particularly credible that this other individual's going to

9

testify to this effect." VRP (Oct. 22, 2019) at 13. Thus, Pagel cannot show that his counsel's performance prejudiced him.

## II. CONSTITUTIONALITY OF RCW 9A.08.020

Pagel argues for the first time on appeal that the accomplice liability statute, RCW 9A.08.020, is unconstitutionally overbroad, and that the trial court's jury instruction was therefore also overbroad. Pagel argues that RCW 9A.08.020 allows conviction for protected speech. We do not consider this argument.

We will not generally review error not raised in the trial court. RAP 2.5; *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). Where a party claims constitutional error, we preview the merits of the claim to determine whether the argument is likely to succeed. *State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591 (2001). A party may raise an error for the first time on appeal if (1) it is a manifest error that (2) affects a constitutional right. RAP 2.5(a)(3); *Kirkman*, 159 Wn.2d at 926. An error is "manifest" where a party shows that the constitutional error actually prejudiced the defendant at trial. *Kirkman*, 159 Wn.2d at 934-35. Our Supreme Court has "rejected the argument that all trial errors which implicate a constitutional right are reviewable under RAP 2.5(a)(3)." *Kirkman*, 159 Wn.2d at 934. Accordingly, we construe exceptions to RAP 2.5(a) narrowly. *Kirkman*, 159 Wn.2d at 935.

RCW 9A.08.020(3) provides:

A person is an accomplice of another person in the commission of a crime if:
(a) With knowledge that it will promote or facilitate the commission of the crime, he or she:
(i) Solicits, commands, encourages, or requests such other person to commit it; or
(ii) Aids or agrees to aid such other person in planning or committing it; or
(b) His or her conduct is expressly declared by law to establish his or her complicity.

10

54276-5-II

First, Pagel's claim raises a constitutional issue because it challenges the constitutionality of the accomplice liability statute under the First Amendment to the U.S. Constitution. Although Pagel raises a constitutional issue, he cannot show a manifest error.

All three divisions of this court have held that RCW 9A.08.020 is not unconstitutionally overbroad. In *State v. Coleman*, Division One explained that the statute "avoids protected speech activities that are not performed in aid of a crime and that only consequentially further the crime." 155 Wn. App. 951, 961, 231 P.3d 212 (2010) *review denied*, 170 Wn.2d 1016, 245 P.3d 772 (2011).

In *State v. Ferguson*, we explained,

Because the statute's language forbids advocacy directed at and likely to incite or produce imminent lawless action, it does not forbid the mere advocacy of law violation that is protected under the holding of *Brandenburg*.[2] Agreeing with and adopting Division One's rationale in *Coleman*, we also hold that the accomplice liability statute is not unconstitutionally overbroad.

164 Wn. App. 370, 376, 264 P.3d 575 (2011).

In *State v. Holcomb*, Division Three rejected an argument that both *Coleman* and *Ferguson* were wrongly decided. 180 Wn. App. 583, 590, 321 P.3d 1288 (2014) *review denied* 180 Wn.2d 1029, 331 P.3d 1172 (2014). The *Holcomb* court concluded the statute was constitutional, explaining, "[T]he accomplice liability statute has been construed to apply solely when the accomplice acts with knowledge of the specific crime that is eventually charged, rather than with knowledge of a different crime or generalized knowledge of criminal activity." 180 Wn. App. at 590.

---

[2] *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969).

11

54276-5-II

Pagel argues, however, that we should reject all these holdings because their reasoning is flawed. He argues that the statute's use of "aid" can involve "pure speech." Br. of Appellant at 18-22. But we rejected that argument in *State v. McPherson*, 186 Wn. App. 114, 120, 344 P.3d 1283 (2015). We explained: "'aiding' was limited to acts that also involved conduct, so *Ferguson's* and *Coleman's* reliance on case law involving conduct was not misplaced. We adhere to the prior decisions and analysis in *Coleman*, *Ferguson*, and *Holcomb*, and McPherson's challenge to the accomplice liability statute fails." *McPherson*, 186 Wn. App. at 120-21.

Pagel cannot show a manifest error because the trial court would have overruled any objection to the accomplice liability jury instruction based on these precedents. Thus, Pagel cannot show that he would have been actually prejudiced at trial. Accordingly, we need not reach Pagel's challenge to the RCW 9A.08.020. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Lee, C.J.

_____
Cruser, J.

12