FILED
COURT OF APPEALS
DIVISION II

2014 MAY 13 AM 9: 15

STATE OF WASHINGTON

BY_____
            DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44054-7-II |
| Respondent, | |
| v. | |
| DENETTE LYNN GOE, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Denette L. Goe appeals her convictions on two counts of forgery and one count of first degree theft arising from her deposit into her bank account of two forged checks and a forged money order. She challenges the sufficiency of the evidence supporting these convictions, claims the information and the to convict instruction omitted an essential element of first degree theft, and claims that the accomplice liability statute is unconstitutionally overbroad. We affirm.

## FACTS

In January 2011, Goe responded to an on-line job offer for a stay-at-home job so she could care for her one-year-old daughter and ease her family's financial situation. Shortly after accepting the job offer, Goe received two checks and a money order in the mail with instructions that she was to cash them, return 90 percent of the money to the sender, and keep 10 percent as a commission.

The first check was for $2,500 and was drawn on Chase Bank. On February 1, 2011, Goe's husband, Brook Moorehouse, deposited the check at the Longview branch U.S. Bank automated teller machine (ATM), using Goe's bank card. On February 3, 2011, there were three withdrawals from Goe's account – teller transactions of $1,500 and $93 and an ATM withdrawal of $500. On February 4, 2011, Goe made on-line web payments from her account of $407.60 and $12.

The second item was a United States Postal Service money order for $970. On February 5, 2011, Goe cashed this money order at the same U.S. Bank. According to the teller, Goe explained that her husband was in Iraq, he did not have his family allotment established yet, and he sent her the money order to pay her rent.

The third item was a check drawn on BancFirst for $2,800. Moorehouse deposited this check on February 8, 2011, through an ATM. He withdrew $100. The next day, there was a teller withdrawal of $1,200 and an ATM withdrawal of $500.

On February 8, 2011, the Postal Service returned the $970 money order to U.S. Bank unpaid, marked "non-micr."[1] Report of Proceedings (RP) at 76-77. On February 9, 2011, the $2,500 check was returned to U.S. Bank unpaid, marked "Refer to maker." RP at 69-70. And on February 14, 2011, the $2,800 check was returned to U.S. Bank unpaid.

After Goe failed to reimburse the bank for the overages these unpaid checks created, the State charged Goe with three counts of forgery and one count of first degree theft. The matter proceeded to a jury trial.

---

[1] Micr is a magnetic ink used to encode account numbers on the bottom of a check or money order.

Frank Najar, a criminal investigator for U.S. Bank, testified at trial as to the bank records and surveillance tapes evidencing Goe's deposits and withdrawals. He stated that (1) the Chase Bank and BancFirst checks were unpaid because they were worthless; (2) the maker and the bank on the BancFirst check had the same address, which indicated a counterfeiter's mistake; and (3) both checks looked identical even though they were drawn on different banks. He also testified that the total amount from these three deposits was $6,270, that the bank was able to seize the $773.06 balance, and that its unrecovered loss was $5,496.94.

Kristen Miller, a federal agent with the U.S. Postal Inspection Service, testified about the money order. She testified that the money order had an invalid serial number, an invalid issuing address, and was copied from an original, valid money order. She described it as an unauthentic copy.

Longview Police Detective Kyle Sahim testified that he interviewed Goe as part of his investigation. When Goe told him that she had cashed all three checks, he told her that the surveillance tapes showed that Moorehouse had deposited the checks through the ATM. She then admitted that Moorehouse deposited them but stated that "he had nothing to do with it." RP at 141. She reiterated to Detective Sahim that Moorehouse had nothing to do with "the forgeries." RP at 143.

When Detective Sahim asked to see Goe's e-mail correspondence between her and the on-line employer, Goe said that she no longer had that e-mail account. On June 3, 2011, however, Detective Sahim found a compact disk that had been left at the police station for him. It contained the text from several e-mails purporting to be correspondence between Goe and a company called CSB International. He noted that the e-mails Goe received had misspelled

words, odd wording, and misplaced periods and commas. He also explained that because Goe had provided only the text of the e-mails and not the actual messages, he could not examine the e-mail headers to verify their source.

After the State rested, the trial court dismissed the forgery charge involving the Chase Bank check (count I) because the State had not presented evidence that it was a forgery. Goe then testified that when hired, she thought she had obtained the on-line job as a secret shopper and did not know that it was not a real job. She explained that she asked the teller if the money order was real and assumed it was because the teller cashed it. She denied saying that her husband was in Iraq. She also explained that she did not ask her husband to deposit the other two checks or withdraw money from the bank and she did not give him permission to use her ATM card. She testified that she only found out after the fact when he told her. She said that she was shocked when the bank manager contacted her and, while she wanted to reimburse the bank, she did not have the money to pay it back for the losses. She also denied telling Detective Sahim that she cashed all the checks and denied describing the checks as forgeries.

The jury found Goe guilty of two counts of forgery and one count of first degree theft. She appeals.

## ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Goe first challenges the sufficiency of the evidence as to all of her convictions, claiming that the State failed to prove all necessary elements of the offenses. We disagree.

1. Standard of Review

"Evidence is sufficient to support a conviction if after viewing the evidence and all reasonable inferences from it in the light most favorable to the State, a rational trier of fact could find each element of the crime proved beyond a reasonable doubt." *State v. Homan*, 172 Wn. App. 488, 490-91, 290 P.3d 1041 (2012), *review granted*, 177 Wn.2d 1022 (2013). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

2. First Degree Theft

An element of first degree theft is that the defendant wrongfully obtained property exceeding $5,000 in value. RCW 9A.56.030. The State argues that it can aggregate the amounts of the two checks and the money order to establish the value of the theft. We agree.

Goe argues that former RCW 9A.56.010(18)(c) (2011) allows the aggregation of only third degree thefts, not thefts of greater value. Former RCW 9A.56.010(18)(c) provides:

> Except as provided in RCW 9A.56.340(4) and 9A.56.350(4), whenever any series of transactions which constitute theft, would, when considered separately, constitute theft in the third degree because of value, and said series of transactions are a part of a criminal episode or a common scheme or plan, then the transactions may be aggregated in one count and the sum of the value of all said transactions shall be the value considered in determining the degree of theft involved.

Because each of the alleged thefts exceeded the seven hundred fifty dollar maximum for third degree theft, Goe claims that the State could not aggregate the amounts. RCW 9A.56.050.

However, the State does not rely on former RCW 9.56.010(18)(c). Instead, a common law rule allows such aggregation of related thefts. In *State v .Barton*, 28 Wn. App. 690, 694-95, 626 P.2d 509 (1981), Division One of this court addressed a claim nearly identical to the one that Goe presents here. Barton argued that the aggregation statute allowed only the aggregation of

5

third degree thefts and therefore the State could not aggregate his five bank withdrawals to reach the required amount for first degree theft. *Barton*, 28 Wn. App. at 694. The court disagreed, explaining:

> The defendant was not charged under the aggregation statute, RCW 9A.56.010(12) (c), but under the theft in the first degree statute, RCW 9A.56.030. The State was permitted to charge theft in the first degree for the five transactions under the well established common law rule that property stolen from the same owner and from the same place by a series of acts constitutes one crime if each taking is the result of a single continuing criminal impulse or intent pursuant to a general larcenous scheme or plan. *State v. Vining*, 2 Wn. App. 802, 808, 472 P.2d 564, 53 A.L.R.3d 390 (1970); Annot., 53 A.L.R.3d 398 (1973).

*Barton*, 28 Wn. App. at 694; *see also State v. Atterton*, 81 Wn. App. 470, 472, 915 P.2d 535 (1996) ("Aggregation of individual transactions to meet the threshold for a particular degree of theft is allowed by common law and by statute.").

Here, the aggregation of the three acts of theft into a single count of first degree theft was proper under the common law. As the evidence demonstrated, such aggregation exceeded the $5,000 threshold for first degree theft. Accordingly, we affirm Goe's first degree theft conviction.[2]

### 3. Forgery

In order to prove that Goe committed forgery, the State had to prove that the instruments were forged and that she knew they were forged. RCW 9A.60.020(1). Goe contends that the State failed to prove that the BancFirst check (count III) was forged and failed to prove that she knew that the money order (count II) and the BancFirst check were forgeries. We find that there was sufficient evidence to support these elements.

---

[2] Goe makes no claim that the State failed in its burden of proof as to the remaining elements nor does she challenge the circumstances allowing common law aggregation. Accordingly, we need not address these issues.

As to whether the BancFirst check was a forgery, Goe argues that the State relied on two inadequate facts: that the maker and bank had the same address and that the check was returned unpaid. But Najar, the U.S. Bank investigator, testified that the two businesses having the same address indicated that the counterfeiter had made a mistake. He also testified that the similarity between the two checks suggested they were forgeries. And he testified that the check was worthless. The jury also could consider as highly suspect Goe's explanation for how she obtained the checks. This was sufficient evidence for a jury to find that the BancFirst check was a forgery.

The evidence also was sufficient to show that Goe knew that the BancFirst check and the money order were forgeries. First, Detective Sahim testified that Goe used the word "forgeries" in describing the instruments. Second, Goe first told the detective that she cashed all the checks but then changed her story when the detective confronted her with the surveillance tape. Third, the teller testified that Goe said she received the money order from her husband, who was then in Iraq. Fourth, Goe admitted keeping all the money and not sending 90 percent of it back to her "employer" even though she was grateful to have a stay-at-home job so she could care for her child. And fifth, the rapid withdrawals of the funds suggested that Goe wanted to withdraw the funds before the bank discovered that the checks and money order were worthless. There was sufficient evidence for a jury to find that Goe knew that the check and money order were forgeries.

B.    ADEQUACY OF THE INFORMATION

Goes argues that the charging document failed to provide her with adequate notice that the State was aggregating the three thefts into one count of first degree theft. Specifically, she

argues that the information was legally deficient because it failed to charge that she committed multiple transactions as part of a common scheme or plan. We disagree that the State was required to reference a common scheme or plan in the information.

An information must include all essential elements of the offense charged. *State v. Brown*, 169 Wn.2d 195, 197, 234 P.3d 212 (2010). Essential elements are those the State must necessarily prove to establish the criminal act charged. *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003). " 'It is sufficient to charge in the language of the statute if it defines the offense with certainty.' " *State v. Lindsey*, 177 Wn. App. 233, 245, 311 P.3d 61 (2013) (quoting *State v. Elliott*, 114 Wn.2d 6, 13, 785 P.2d 440 (1990), *petition for review filed*, No. 89555-4 (Wash. Nov. 20, 2013)). The primary goal of the "essential elements" rule is to give notice to an accused of the nature of the crime that he must be prepared to defend against. *State v. Kjorsvik*, 117 Wn.2d 93, 101, 812 P.2d 86 (1991) (citing 2 W. LaFave & J. Israel, Criminal Procedure § 19.2, at 446 (1984); 1 C. Wright, Federal Practice § 125, at 365 (2d ed. 1982)). All essential elements of the crime charged, including nonstatutory elements, must be included in the charging document so that a defense can be properly prepared. *Kjorsvik*, 117 Wn.2d at 101-02.

When the adequacy of the information is challenged for the first time after verdict or on appeal, we ask two questions: (1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he was nonetheless actually prejudiced by the inartful language that caused a lack of notice. *Kjorsvik*, 117 Wn.2d at 105-06.

RCW 9A.56.030(1)(a) and RCW 9A.56.020(1)(a) collectively require the State to prove that the defendant obtained or exerted unauthorized control over someone else's property,

exceeding a value of $5,000, with the intent of depriving that person of such property. The information charged Goe with first degree theft as follows:

> The defendant, in the County of Cowlitz, State of Washington, on, about, or between February 01, 2011, and February 08, 2011, did wrongfully obtain or exert unauthorized control over property belonging to another, of a value exceeding $5,000, to-wit: U.S. currency, with intent to deprive U.S. Bank of such property, contrary to RCW 9A.56.030(1)(a) and RCW 9A.56.020(1)(a) and against the peace and dignity of the State of Washington.

Clerk's Papers at 2. This statement contains all of the statutory elements.

Goe provides no authority requiring the State to allege that the theft involved multiple transactions as part of a common scheme or plan. As noted above, at common law the State can aggregate multiple thefts into one charge, which is what occurred here. Further, because Goe is making this claim for the first time on appeal, we apply the post-verdict, two-part *Kjorsvik* test. We are satisfied that the State's use of a range of dates, which here encompassed the passing of the checks and money order, was factually adequate to put Goe on notice and allow her to prepare a defense. Further, and equally important, Goe fails to show any resulting prejudice. We hold that the information was sufficient.

C.    ADEQUACY OF THE TO CONVICT INSTRUCTION

Goe argues that the trial court's to convict instruction for first degree theft was inadequate because it omitted an essential element of the crime. Specifically, she argues that the to convict instruction omitted the State's burden of showing that the theft involved multiple

transactions as part of a common scheme or plan. We disagree that the instruction was inadequate.[3]

As noted in discussing the adequacy of the charging document, the State's reliance on aggregation to prove the threshold value does not make it an element of the offense. Here, the to convict instruction included all elements of the offense as is necessary for the jury to measure the evidence and determine guilt. *State v. Mills*, 154 Wn.2d 1, 6-7, 109 P.3d 415 (2005). No legal basis supports Goe's claim. *See State v. Reid*, 74 Wn. App. 281, 292, 872 P.2d 1135 (1994) (common scheme or plan is not an element of first degree theft and need not be defined in the jury instructions). We hold that the trial court did not err in giving the to convict instruction.

D.     ACCOMPLICE LIABILITY STATUTE

The State alleged that Goe and her husband were accomplices in the forgeries and theft, and the trial court instructed the jury on accomplice liability. Goe argues that Washington's accomplice liability statute, RCW 9A.08.020, is unconstitutionally overbroad because it criminalizes speech protected by the First Amendment.[4] We disagree.

We presume that statutes are constitutional and review challenges to them de novo. *State v. Lanciloti*, 165 Wn.2d 661, 667, 201 P.3d 323 (2009). Under RCW 9A.08.020(3)(a), a person is guilty as an accomplice if "[w]ith knowledge that it will promote or facilitate the commission of [a] crime," she "[s]olicits, commands, encourages, or requests [another] person to commit [the crime]" or "[a]ids or agrees to aid such other person in planning or committing [the crime]."

---

[3] The State counters that Goe failed to object to the instruction below and therefore cannot raise this issue for the first time on appeal. It further argues that Goe cannot demonstrate a manifest constitutional error under RAP 2.5(a)(3) and therefore this court should not review the instruction. We need not address this issue because our analysis above shows there is no error.

[4] U.S. CONST.

Goe argues that Washington's accomplice liability statute does not meet the standard set forth in *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed .2d 430 (1969), in which the United States Supreme Court held that the First Amendment protects speech advocating criminal activity unless it "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Because "aid" is not defined in the statute, Goe argues that the statute criminalizes speech other than that " 'directed to inciting or producing imminent lawless action.' " Br. of Appellant at 27 (quoting *Brandenburg*, 395 U.S. at 447).

We rejected this same challenge in *State v. Ferguson*. 164 Wn. App. 370, 375-76, 264 P.3d 575 (2011) (citing *State v. Coleman*, 155 Wn. App. 951, 960-61, 231 P.3d 212 (2010)). In *Coleman*, Division One of this court held that:

> [t]he accomplice liability statute . . . requires the criminal mens rea to aid or agree to aid the commission of a specific crime with knowledge that the aid will further the crime. Therefore, by the statute's text, its sweep avoids protected speech activities that are not performed in aid of a crime and that only consequentially further the crime.

155 Wn. App. at 960-61. In *Ferguson*, we adopted the reasoning in *Coleman* and addressed the *Brandenburg* standard, holding that "[b]ecause the statute's language forbids advocacy directed at and likely to incite or produce imminent lawless action, it does not forbid the mere advocacy of law violation that is protected under the holding of *Brandenburg*." 164 Wn. App. at 376. We adhere to our decision and analysis in *Ferguson* and hold that Goe's challenge to the accomplice liability statute fails.

44054-7-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
P. ORGAN, J.

_____
LEE, J.